No. 58,205

STATE OF KANSAS, *Appellee,* v. LONNIE STEWART McKIBBEN,
*Appellant.*
(722 P.2d 518)

Opinion filed July 18, 1986.

*Patrick H. Thompson*, of Salina, argued the cause and was on the brief for the appellant.

*Mickey W. Mosier*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: The defendant, Lonnie Stewart McKibben, appeals from his conviction by a Saline County, Kansas, jury of second-degree murder. Issues asserted on appeal are whether the trial court erred in denying various pretrial motions made by the defendant, whether certain evidence concerning the victim should have been admitted at trial, whether the defendant was denied effective assistance of counsel, and whether the evidence is sufficient to support the defendant's conviction.

A fifteen-year-old girl, Sheleen McClain, was found at approximately 8:30 a.m. on Saturday, November 3, 1984, sitting by a hedgerow in rural McPherson County. She was wearing only a cotton top and underpants. She had been shot in the back and was covered with blood. The victim was first taken to a Lindsborg hospital where it was decided to transport her to Salina. The victim died approximately one hour after her arrival at the Asbury Hospital in Salina, Kansas. Medical personnel questioned Ms. McClain if she knew who had shot her, but Ms. McClain turned away. A fresh, opened package of Benson & Hedges cigarettes was recovered from the driveway into the field where the victim was found.

The preceding evening, Friday, November 2, 1984, Sheleen and her friend, Melody Hoeffner, had phoned the defendant, a

43-year-old Salina man, and asked him to take them to two football games. Melody had called the defendant before when she needed a ride. The number she would call belonged to Brenda Deupree, with whom the defendant used to live. The defendant drove a 1979 copper-colored Ford Pinto station wagon. The defendant picked the two girls up at 6:30 p.m., and drove them to the football games and anywhere else they wanted to go. The defendant took Sheleen home first at approximately 12:15 a.m. Then, before taking Melody home, the defendant stopped at a Quik Trip and bought two packages of Benson & Hedges cigarettes. Melody got home at approximately 12:45 a.m.

Melody testified the defendant had also given Sheleen and her a ride on Halloween, October 31, 1984. That was the first time Sheleen met the defendant. On both nights, Halloween and Friday, November 2, the defendant picked the girls up at Sheleen's house. On November 2, Melody noticed two long guns in the defendant's car.

Mr. Trow, who lived across the street from Sheleen, was leaving his house at approximately 1:40 a.m., on November 3, 1984, when he saw a white male at Sheleen's door. Mr. Trow observed the man for twenty minutes. The man smoked a cigarette, walked to the side of Sheleen's house, and then sat in a brown Ford Pinto station wagon with Saline County tags. When Mr. Trow returned at approximately 3:00 a.m, the car and the man were gone.

The defendant was interviewed by police Saturday afternoon at 1:45 p.m. (November 3), and admitted he had spent most of Friday evening with Melody and Sheleen. The defendant told police he took Sheleen home first, then Melody, and then went to Hardee's for a cup of coffee. Then, as he was living out of his car, he parked somewhere between Western Sizzlin and Super 8 Motel and slept in his car. During the defendant's interrogation the police noticed the defendant was wearing new shoes and smoking Benson & Hedges cigarettes.

One rifle, a .357, was recovered from the defendant's car when he was arrested. The defendant had given a second rifle, a .284, to Brenda Deupree earlier that Saturday morning to pawn. Seven empty Benson & Hedges cigarette packages were found in the defendant's car.

The Benson & Hedges cigarette packages found near the

victim's body and those recovered from the defendant during police interrogation both had tax stamp number 43667 on their respective cellophane wrappers. The distributor who was assigned tax stamp number 43667 supplied the Salina Quik Trip stores with all their cigarettes in November 1984. On November 9, 1984, a Benson & Hedges cigarette butt was found by police in the street in front of the victim's house. An analysis of the cigarette butt showed it was smoked by a blood type A secretor. The defendant is a type A secretor.

The new pair of shoes defendant was wearing when he was arrested at 1:40 p.m., on November 3, 1984, had been purchased at 12:15 p.m., that same day. His old shoes were discovered in a ditch and an analysis showed the possible presence of blood. The jeans the defendant was wearing at the time of his arrest were also analyzed. The right rear pocket was stained with human blood, Type O, containing two genetic markers. The victim's blood sample was found to be Type O and contained the same two genetic markers.

An autopsy revealed the victim had recently experienced forceful sexual intercourse and the victim had had sex within twelve hours preceding her death. The victim was on her menstrual period at the time of her death. Analysis of the defendant's penile washings contained blood.

The defendant was charged with first-degree murder and was convicted of second-degree murder. After the Habitual Criminal Act was invoked, the defendant was sentenced to a prison term of 30 years to life.

The defendant made three pretrial motions, all of which were denied by the trial court. The defendant argues on appeal it was error to deny these motions.

The first is defendant's motion to dismiss for improper venue. The applicable statute is K.S.A. 22-2611 which states, "If the cause of death is inflicted in one county and the death ensues in another county, the prosecution may be in either of such counties. Death shall be presumed to have occurred in the county where the body of the victim is found."

Here, the victim was found alive in McPherson County, Kansas, along a roadway, about ¾ mile south of the Saline/McPherson County line. She was first taken to a hospital in Lindsborg, Kansas, (McPherson County) where she was treated by Dr.

Loder. Dr. Loder determined the victim required surgery which the Lindsborg hospital could not provide in time because surgeons and nurses would have to be called in from out of town. The decision was made to transport her to Asbury Hospital in Salina, Kansas, where surgeons were available. Dr. Loder accompanied the victim in the ambulance, and testified she was still alive when they reached the Asbury Hospital emergency room. They arrived at Asbury Hospital at 9:49 a.m. The victim later died in the operating room at approximately 11:05 a.m.

The defendant argues venue lies in McPherson County and not Saline County. He argues the victim was all but officially dead upon her arrival at Asbury Hospital and the "last ditch effort" to save her life by transporting her to Salina is not sufficient to vest venue in Saline County. He argues venue should not be subject to an official pronouncement of death.

The defendant argues the presumption that death occurred in the county where the body was found was not overcome in this case. Legislative research does not reveal the intent of the legislature in amending K.S.A. 22-2611 in 1970 to include such a presumption. However, clearly the presumption is necessary in cases where a dead body is discovered and it is not known where death occurred. Here, the evidence clearly establishes death occurred in Saline County.

The defendant's arguments are without merit and the trial court did not err in refusing to dismiss for lack of venue in Saline County. The victim was found alive in McPherson County, where it is assumed she had been shot. She was alive when she arrived in Asbury Hospital in Saline County, and she died there approximately an hour later. Under the facts of this case, K.S.A. 22-2611 clearly provides that venue is proper in either McPherson County where the cause of death was inflicted, or in Saline County where death ensued.

The defendant also filed a motion for a change of venue based on prejudicial pretrial publicity in the event the trial court ruled venue was proper in Saline County. This motion was denied and the defendant asserts such denial was improper because he established prejudice as a demonstrable reality. In support of his motion for a change of venue, the defendant submitted copies of 14 local newspaper articles, 30 local radio news broadcasts, and 25 affidavits of Saline County residents who stated defendant

could not receive a fair and impartial trial at the hands of a jury in Saline County.

K.S.A. 22-2616(1) allows a change of venue once "the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county." The granting of a change of venue lies within the sound discretion of the trial court. *State v. Sanders*, 223 Kan. 273, 280, 574 P.2d 559 (1977). The burden is on the defendant to establish prejudice as a demonstrable reality, and not as a matter of speculation. Specific facts and circumstances must be established to indicate it will be practically impossible for the defendant to obtain an impartial jury to try the case. *State v. Haislip*, 237 Kan. 461, 485-86, 701 P.2d 909, *cert. denied* _____ U.S. _____ (1985); *State v. Hill*, 233 Kan. 648, 650-51, 664 P.2d 840 (1983). Media publicity alone will not establish prejudice per se. *State v. May*, 227 Kan. 393, 395, 607 P.2d 72 (1980); *State v. Gander*, 220 Kan. 88, 92, 551 P.2d 797 (1976). Nor does the mere inclusion of identical conclusory type affidavits, as here, establish prejudice. *State v. Foy*, 224 Kan. 558, 562, 582 P.2d 281 (1978); *State v. Black*, 221 Kan. 248, 249, 559 P.2d 784 (1977).

We have reviewed the newspaper articles, radio releases, and affidavits submitted by the defendant to the trial court and find the trial court did not abuse its discretion in denying the defendant's motion for a change of venue. The reports were published or released over three months prior to trial and for the most part the reports were factual, objective, and matters of public interest. The defendant did not request that a transcript of the voir dire be prepared and, therefore, we cannot review whether any prospective juror had viewed the articles or the photograph of the defendant in handcuffs and prison garb, or heard the other reports. The affidavits submitted are identical and conclusory in their wording to the effect that the defendant cannot receive a fair and impartial trial in Saline County, Kansas. Here, the defendant failed to establish prejudice beyond the level of speculation and the trial court did not err in denying his motion to change venue.

The defendant argues the trial court erred in denying his motion to appoint a special prosecutor. Here, the defendant was found to be indigent and Julie McKenna, public defender, was

appointed to represent the defendant at the time of his first appearance on November 5, 1984. Ms. McKenna represented the defendant from that time until an order was entered on December 28, 1984, permitting her to withdraw. During that time, Ms. McKenna represented the defendant at his preliminary hearing and his arraignment, and had filed various motions such as motions to dismiss for lack of venue. Ms. McKenna sought leave to withdraw because she had accepted a job effective March 1, 1985, as an assistant Saline county attorney.

A hearing was held February 5, 1985, on defendant's motion to appoint a special prosecutor. No testimony was given but oral arguments were heard. The defendant requested either the entire three-person staff of the Saline County prosecutor's office be disqualified or, in the alternative, restraints be placed on Ms. McKenna. The Saline county attorney, Mickey Mosier, represented to the court he had prosecuted the case from its inception and would continue to do so. He stated Ms. McKenna would have no responsibilities with this case and there would be no communication with her about the case. The trial court denied the defendant's motion to disqualify the entire county attorney's staff. The trial court stated it felt comfortable in believing Ms. McKenna fully understood her ethical obligations not to participate, either directly or indirectly, in the prosecution of the defendant. In order to avoid the appearance of impropriety, the trial court specifically disqualified Ms. McKenna from engaging directly or indirectly in the prosecution of the defendant.

The defendant argues the trial court's order precluding Ms. McKenna from any participation is not a sufficient precaution to insure public confidence and avoid the appearance of impropriety.

The trial court properly disqualified Ms. McKenna from any direct participation and that issue is not raised on appeal. See *State v. Leigh*, 178 Kan. 549, 552-53, 289 P.2d 774 (1955). The issue is whether the entire staff of the county attorney's office should be disqualified because of Ms. McKenna's former representation of the defendant.

Whether an entire prosecuting staff should be disqualified because one prosecuting attorney has formerly represented the defendant on a prior, unrelated, criminal matter was discussed in *State v. Laughlin*, 232 Kan. 110, 114, 652 P.2d 690 (1982). It was stated:

"In any particular case where the issue is raised, the trial court must determine whether the prosecutor, by reason of his prior professional relationship with the accused, has obtained knowledge of facts upon which the later case is predicated or facts which are closely interwoven therewith. The important consideration is to protect the confidence inherent in the attorney-client relationship and thus to avoid a breach of trust between the client and his attorney. The determination of whether there is a conflict of interest actually present or whether the prior relationship creates an appearance of impropriety lies within the sound discretion of the trial court. *In re Estate of Richard,* 4 Kan. App. 2d 26, 31, 602 P.2d 122 (1979)."

The defendant in *Laughlin* admitted there was no actual breach of confidence or prejudice shown and this court ruled the trial court did not abuse its discretion in refusing to disqualify the entire district attorney's office from participating in the trial of the accused.

Here, Ms. McKenna represented the defendant on the very matter for which he was being prosecuted. There is a split in authority concerning whether the entire staff of a prosecutor's office should be disqualified in such a case.

Some states have adopted a per se disqualification rule, *i.e.,* the mere appearance of impropriety alone is enough to warrant disqualification of an entire prosecuting office based on one member's prior representation of the defendant in the same prosecution. Disqualification is necessary irrespective of whether confidences were breached or prejudice to the defendant resulted. See *State v. Latigue,* 108 Ariz. 521, 502 P.2d 1340 (1972); *People v. Stevens,* 642 P.2d 39 (Colo. App. 1981); *Banton v. State,* 475 N.E.2d 1160 (Ind. App. 1985); *State v. Croka,* 646 S.W.2d 389 (Mo. App. 1983); *State v. Chambers,* 86 N.M. 383, 524 P.2d 999 (1974); *People v. Shinkle,* 51 N.Y.2d 417, 434 N.Y.S.2d 918, 415 N.E.2d 909 (1980); *State v. Cooper,* 63 Ohio Misc. 1, 409 N.E.2d 1070 (1980).

A majority of the jurisdictions, however, have refused to adopt such a blanket rule. These courts look at the circumstances of the particular case to determine whether confidences have been breached resulting in prejudice to the defendant, and whether the defendant's former attorney participated in any way in prosecuting the defendant. If any impropriety is found, the entire office must be disqualified. The trial court makes such a determination and absent an abuse of discretion the appellate court

will not reverse. See *Hannon v. State,* 48 Ala. App. 613, 266 So. 2d 825 (1972); *Upton v. State,* 257 Ark. 424, 516 S.W.2d 904 (1974); *Chadwick v. Superior Court,* 106 Cal. App. 3d 108, 164 Cal. Rptr. 864 (1980); *State v. Jones,* 193 Conn. 70, 475 A.2d 1087 (1984); *Thompson v. State,* 246 So. 2d 760 (Fla. 1971); *Surrette v. State,* 251 So. 2d 149 (Fla. Dist. App. 1971); *State v. Orozco,* 202 N.W.2d 344 (Iowa 1972); *State v. Bell,* 346 So. 2d 1090 (La. 1977); *State v. Brown,* 274 So. 2d 381 (La. 1973); *Young v. State,* 297 Md. 286, 465 A.2d 1149 (1983); *Pisa v. Commonwealth,* 378 Mass. 724, 393 N.E.2d 386 (1979); *Collier v. Legakes,* 98 Nev. 307, 646 P.2d 1219 (1982); *State v. Cline,* 122 R.I. 297, 405 A.2d 1192 (1979); *State v. Smart,* 278 S.C. 515, 299 S.E.2d 686 (1982), *cert. denied* 460 U.S. 1088 (1983); *Mattress v. State,* 564 S.W.2d 678 (Tenn. Crim. App. 1977); *State v. Miner,* 128 Vt. 55, 258 A.2d 815 (1969). Accord *United States v. Caggiano,* 660 F.2d 184 (6th Cir. 1981), *cert. denied* 455 U.S. 945 (1982). See also Annot., 31 A.L.R.3d 953.

The American Bar Association committee on professional ethics has also ruled that it is not necessary to disqualify the entire governmental office. The individual lawyer should be screened from having direct or indirect participation in the matter and communication with colleagues concerning the prosecution is prohibited. Formal Opinion 342, 62 A.B.A.J. 517 (1976).

We choose to follow the majority of jurisdictions and reject the per se rule of disqualification. In the instant case, the trial court ordered Ms. McKenna not to participate directly or indirectly in the defendant's prosecution. Mr. Mosier, the county attorney, represented to the trial court there would be no communication with her concerning the defendant's case. Thus, the confidences inherent in the attorney-client relationship between the defendant and Ms. McKenna were protected. We find the trial court did not abuse its discretion in refusing to appoint a special prosecutor.

The defendant next argues the trial court erred regarding the admission of evidence. First, the defendant argues the victim's blood samples were inadmissible and, second, the defendant argues evidence taken from the victim's bedroom was admissible.

The trial court overruled defendant's objection based on lack

of foundation in allowing the admission of the victim's blood samples. The defendant argues the evidence is inadequate to show the blood sample did not contain transfused blood.

The issue in *Divine v. Groshong*, 235 Kan. 127, 679 P.2d 700 (1984), was whether a blood test not taken in compliance with K.S.A. 8-1001 is admissible in a civil negligence case. The following language of the court in determining that issue is applicable to the issue raised in the instant case:

"If the blood sample is taken under appropriate conditions to guard against contamination, if the sample is properly marked and conveyed to the laboratory, if the chemical testing is properly conducted by competent personnel, and if the test results are relevant and material to the issues presented in the litigation, then those results are admissible in a civil action whether or not they are taken in conformity with the statute." 235 Kan. at 133.

See also Annot., 2 A.L.R.4th 500.

Here, the defendant is not complaining that the proper chain of custody was not established after the blood sample was drawn from the victim. Rather, the defendant is complaining that at the time the blood was drawn, the evidence is inadequate to show the victim had not already received a blood transfusion which contaminated the blood sample from the beginning.

Dr. Loder, the victim's treating physician at the Lindsborg hospital, testified no attempt was made to give the victim any whole blood either in Lindsborg or in the ambulance on the way to the Salina hospital. Dr. Loder testified that, upon arrival at the emergency room in Salina, blood was drawn from the victim before fluids of any kind were given. The blood was then given to Mr. Emler, the emergency medical technician who had transported the victim from the scene of the crime to the Lindsborg hospital and then to the Salina hospital. Mr. Emler testified no blood transfusions were given before he handed the blood sample to the medical technologist for blood typing. Barbara Mallon, the medical technologist, testified she did not know whether blood transfusions had been given at the time she received the blood sample from Mr. Emler. While medical records indicate that blood was checked out to the victim within two minutes of her arrival at the emergency room, that does not establish transfusions were given prior to the drawing of the sample. The State established to the satisfaction of the trial court that the victim's blood sample had not been contaminated; therefore, the trial court did not err in allowing the blood sample to be admitted into

evidence and in permitting the forensic serologist to testify concerning his findings.

At two different times during the trial, the defendant attempted to have admitted into evidence a package of Winston cigarettes and two condoms found in the victim's bedroom. The defendant offered the evidence as relating to the character of the victim. Each time the court sustained the State's objection on the ground of relevancy. The defendant's argument on appeal that the trial court erred is without merit. Relevant evidence is any evidence having any tendency to prove any material fact. K.S.A. 60-401, *State v. Gauger*, 200 Kan. 563, 565, 438 P.2d 463 (1968). The character of the victim was not an issue, and the trial court properly held the evidence irrelevant.

The defendant argues he was denied the effective assistance of counsel. On appeal the defendant cites five specifics to establish Mr. Robertson's representation of him was ineffective: (1) Mr. Robertson made no objection to the introduction of the defendant's two weapons when there was no evidence connecting them to the victim's death; (2) he failed to obtain ballistics testing on the two weapons; (3) he failed to lay proper foundation for the expert testimony of a gunsmith; (4) he failed to call several witnesses who had been subpoenaed to testify for the defendant; and (5) he failed to request an instruction regarding venue.

In *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986), this court held that in an appeal from conviction of a crime, the allegation that the defendant did not have effective assistance of counsel will not be considered for the first time on appeal. Our holding to the contrary in *State v. Pink*, 236 Kan. 715, 696 P.2d 358 (1985), was overruled. The procedure to be followed to properly present the issue on appellate review is stated in *State v. Van Cleave*. The trial court must first be given the opportunity to rule upon the issue.

Additionally, much deference and reliance must be placed upon the wisdom and determination of the trial judge who viewed the entire proceedings first hand. *Chamberlain v. State*, 236 Kan. 650, 659-60, 694 P.2d 468 (1985).

Here the appellant filed a motion in the trial court for appointment of new counsel on April 23, 1985, on the ground that he was dissatisfied with his present counsel. The motion was signed by the appellant, and his trial counsel certified delivery of

the motion for the appellant upon the prosecuting attorney. The motion was scheduled for hearing and heard by the trial court upon arguments presented by the appellant and the prosecuting attorney. The trial court by an order filed April 29, 1985, denied the motion for appointment of new counsel. The substance of the foregoing is that the issue concerning incompetence of trial counsel was never effectively presented to the trial court. We adhere to *State v. Van Cleave* and will not consider the issue on ineffective assistance of counsel raised for the first time on appeal.

Finally, the defendant argues the circumstantial evidence is insufficient to support his conviction. The defendant argues that to conclude the defendant is guilty beyond a reasonable doubt requires the stacking of inference upon inference.

The scope of review applicable when the sufficiency of the evidence is challenged on appeal has been often stated: the question is whether the evidence, when viewed in a light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Zuniga*, 237 Kan. 788, 794, 703 P.2d 805 (1985). When considering the sufficiency of circumstantial evidence to sustain a conviction on appeal, the appellate court's function is limited to ascertaining whether there is a basis in the evidence for the jury's verdict. If the essential elements of the charge are supported by any competent evidence, the conviction must stand. *State v. Soverns*, 215 Kan. 775, 529 P.2d 181 (1974). A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Hanks*, 236 Kan 524, Syl. ¶ 3, 694 P.2d 407 (1985).

We find the circumstantial evidence introduced at trial is sufficient to support the defendant's conviction of second-degree murder. The victim was shot in the back and left to die in a field in the country. The defendant had spent the previous evening with the victim. The defendant had given one of his friends a rifle to pawn the next morning. The right rear pocket of defendant's jeans had blood smears which matched the blood of the victim. Only ten percent of the population have blood similar to the victim's, containing the two genetic markers. A package of

Benson & Hedges cigarettes recovered from the defendant at the time of his arrest and another package recovered near the victim's body had the same tax stamp number—43667. The supplier who was assigned that tax stamp number distributed Benson & Hedges cigarettes to Quik Trip stores in Salina. Melody Hoeffner testified the defendant stopped at a Quik Trip store after he had taken Sheleen home in the early morning hours of November 3, 1984, and bought two packages of Benson & Hedges cigarettes. At the time of his arrest, the defendant was wearing new shoes, purchased approximately one hour earlier. His old shoes were recovered from a ditch, and an analysis showed the possible presence of blood. The victim had been involved in a forceful act of sexual intercourse within twelve hours of her death. Seminal fluid was found on the inside of the fly of defendant's jeans. The victim had been on her menstrual period when she died. The defendant was found to have blood on his penis.

The probative value of each bit of circumstantial evidence permitting its individual inference was for the jury to determine, and the accumulation of these inferences supports the jury's finding of guilt beyond a reasonable doubt. There was no stacking of inference upon inference to establish guilt.

The defendant asserts the inconsistencies in Mr. Trow's testimony cause the evidence to be insufficient to establish the defendant was with the victim at 1:40 a.m., on November 3, 1984. The credibility of witnesses is within the province of the trier of fact, and not the appellate court. It is not the duty of this court to weigh the evidence. *State v. Holt*, 221 Kan. 696, 700-01, 561 P.2d 435 (1977).

The evidence, while circumstantial, could lead a rational factfinder to find the defendant guilty beyond a reasonable doubt.

The judgment of the lower court is affirmed.