NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0291-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAISHON I. SMITH,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **February 21, 2024**
>
> **APPELLATE DIVISION**

Argued December 18, 2023 – Decided February 21, 2024

Before Judges Gilson, DeAlmeida, and Berdote Byrne.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 21-08-1004

Raymond Louis Hamlin argued the cause for appellant (Hunt, Hamlin & Ridley, attorneys; Raymond Louis Hamlin, of counsel and on the briefs).

Monica Lucinda do Outeiro, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Monica Lucinda do Outeiro, of counsel and on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

In this appeal we address whether an entire county prosecutor's office must be recused from a criminal prosecution when the county prosecutor has a personal, disqualifying conflict. We hold that so long as the prosecutor has been completely screened from and has no oversight of the matter, the prosecutor's office should not be disqualified. Accordingly, we affirm the trial court's order denying defendant's motion to disqualify the entire Monmouth County Prosecutor's Office (MCPO) from continuing to prosecute defendant and multiple co-defendants in this criminal matter.

I.

We discern the facts from the record on defendant's motion to recuse the MCPO. In February 2020, an MCPO task force began investigating gang-related activities in Monmouth and other New Jersey counties. That task force was led by an MCPO detective, included several other MCPO detectives, and coordinated some of its investigations with other law enforcement agencies.

Ultimately, the task force came to believe that various street gangs were coordinating an array of criminal activities into a "systematic criminal enterprise," referred to as "Golden State." The task force developed evidence that Golden State members acted in concert to distribute illegal drugs, use and

2

transfer firearms, recruit and discipline members, and expand their criminal activities.

Beginning in October 2020, defendant Daishon I. Smith was charged with multiple criminal offenses, the majority of which were based on evidence developed by the task force. Initially, on October 4, 2020, defendant was charged with several drug-related offenses. Later that month, defendant and more than thirty co-defendants were charged with numerous first- and second-degree offenses, including racketeering, drug offenses, and weapons offenses.

Ultimately, in August 2021, based on the evidence developed by the task force, defendant and thirty-six co-defendants were indicted for over 120 crimes. The charges against defendant in the indictment included first-degree racketeering conspiracy, N.J.S.A. 2C:5-2, :41-2(d); first-degree gang criminality, N.J.S.A. 2C:33-29; first-degree attempted murder, N.J.S.A. 2C:5-1, :11-3; first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2, :11-3; and numerous weapons and drug distribution offenses.

For approximately seven months, from October 30, 2020, to May 21, 2021, defendant was represented by Raymond S. Santiago, who was then engaged in the private practice of law. During that time, Santiago represented defendant at a detention hearing and filed two applications related to defendant's

A-0291-23

pretrial detention. Santiago also received initial discovery related to the charges filed against defendant in October 2020.

In May 2021, Santiago filed a motion to be relieved as defendant's counsel. In support of that motion, Santiago certified that in late April 2021, he had some disagreements with defendant and defendant directed him to cease working on his case. Santiago also conferred with defendant's family before filing his motion to be relieved as counsel. On May 21, 2021, the trial court granted Santiago's motion to be relieved as defendant's counsel. Since then, defendant has been represented by other counsel. His current counsel began to represent defendant on September 8, 2021.

Over a year later, on October 7, 2022, Santiago was sworn in as Acting Monmouth County Prosecutor. The following month, the Senate approved Santiago's appointment, and he was sworn in as the Monmouth County Prosecutor.

In February 2023, defendant moved to recuse the entire MCPO from prosecuting him in this matter. More than ten co-defendants joined in that motion. In response, the MCPO submitted a certification from its Deputy First Assistant Prosecutor representing that Santiago had been and would continue to be screened from any involvement in this matter.

4

In that regard, the Deputy First Assistant explained that when Santiago began acting as county prosecutor, the Attorney General's Office advised the MCPO that Santiago should be screened from any cases involving defendants whom Santiago had previously represented. The certification also represented that Santiago was not involved with the case and had no communications about the case with MCPO personnel handling the matter.

After receiving defendant's recusal motion, the MCPO notified the Attorney General's Office. In reply, the Attorney General's Office sent a March 24, 2023 letter, which stated that the MCPO could "continue to investigate and prosecute the matter as [it] deem[ed] appropriate," provided Santiago continued to be "wall[ed] off . . . from any involvement in this matter" and that the First Assistant Prosecutor or Deputy First Assistant Prosecutor "assume[d] supervisory authority over this matter."

In summary, the MCPO has represented that since Santiago began acting as county prosecutor, he has not been involved in this prosecution, has always been screened from the prosecution, has not shared any information he received as counsel for defendant, and has had no supervisory authority over the prosecution.

A-0291-23

After hearing oral argument, on May 1, 2023, the trial court issued an order and written opinion denying the motion. In its comprehensive opinion, the trial court found that the MCPO's representations were reliable and that there were no legal grounds for the court to compel the recusal of the entire MCPO. The trial court accepted, as conceded by the MCPO, that Santiago had a conflict that required he not be personally involved in the prosecution of defendant. The trial court went on to reason that there was no basis for imputing that conflict to the entire MCPO because Santiago had always been screened from the prosecution, had never shared confidential information about defendant, and was not supervising the prosecution.

Defendant moved for a stay of the case pending his request for appellate interlocutory review. On May 3, 2023, the trial court denied that motion. Thereafter, we granted defendant's motion for leave to appeal. Defendant did not file a motion with us for a stay of the criminal matter pending this appeal.

II.

On appeal, defendant presents four arguments, which he articulates as follows:

> I.    THE TRIAL COURT ERRED AS CONFLICTS INVOLVING APPOINTED OR ELECTED PROSECUTORS CALL FOR IMPUTING THE CONFLICT TO THE ENTIRE OFFICE

A-0291-23

II.     THE TRIAL COURT ERRED IN FINDING THAT THE STATE WAS UNDER NO OBLIGATION TO NOTIFY [] DEFENDANT, THE COURT, OR THE ATTORNEY GENERAL'S OFFICE UPON THE APPOINTMENT OF RAYMOND SANTIAGO AS MONMOUTH COUNTY PROSECUTOR

A.     THE STATE FAILED TO OBTAIN WRITTEN CONSENT FROM [] DEFENDANT AND THE ATTORNEY GENERAL'S OFFICE

B.     SCREENING DOES NOT CURE THE PREJUDICE TO [] DEFENDANT

III.     THE SEPARATION OF POWERS DOCTRINE WILL NOT BAR A COURT FROM ADDRESSING A LEGAL ERROR

IV.     THE COURT WAS IN ERROR IN THE FAILURE TO GRANT A STAY

Whether counsel, or an entire firm or office, should be disqualified is an issue of law "subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010); State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015). Moreover, when "'the trial judge had no factual disputes to resolve on credibility grounds and only legal conclusions to draw,' reviewing courts do not 'defer to the trial judge's findings' or ultimate decision." Hudson, 443 N.J. Super. at 282 (quoting State v. Bruno, 323 N.J. Super. 322, 331-32 (App. Div. 1999)).

7

A.    Whether a Prosecutor's Personal Conflict Should Be Imputed to the Entire Office.

All parties agree that Santiago has a conflict based on his prior representation of defendant that disqualifies him from being involved in the criminal prosecution of defendant.  The disputed issue is whether Santiago's personal conflict should be imputed to the entire MCPO.  To answer that question, we look to the Rules of Professional Conduct (the RPCs) and cases analyzing the RPCs.

We begin by considering whether an entire prosecutor's office should be disqualified where the county prosecutor previously represented a defendant.  The RPCs set forth the "enforceable standards of behavior for lawyers."  State v. Rue, 175 N.J. 1, 14 (2002).  A court's determination of whether an attorney has a conflict of interest is guided by the RPCs.  See Trupos, 210 N.J. at 461-62.  The RPCs applicable to this appeal are RPC 1.9, RPC 1.11, and RPC 1.10.

RPC 1.9 addresses conflicts of interest related to former clients.  That Rule prohibits a lawyer who has previously represented a client from representing another client "in the same or a substantially related matter" where the former client's and the current client's interests are materially adverse.  RPC 1.9(a).  RPC 1.9 also prohibits a lawyer from using or disclosing information related to his or her prior representation to the disadvantage of the former client, except if

8

other provisions in the RPCs would permit or require disclosure of that information or if the information has become generally known. RPC 1.9(c).

RPC 1.11 addresses successive government and private employment. Subsection (d) of this Rule addresses lawyers formerly in private practice who become government lawyers or public officials. RPC 1.11(d). This subsection restricts a government lawyer's participation in matters with which he or she was involved while in private practice, or in which the lawyer's former client had interests adverse to the interests of the government agency or office for which the lawyer now works. RPC 1.11(d)(2). In that regard, RPC 1.11(d) states in relevant part:

> Except as law may otherwise expressly permit, a lawyer serving as a government lawyer or public officer or employee of the government:
>
> . . . .
>
> (2) shall not participate in a matter (i) in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, or (ii) for which the lawyer had substantial responsibility while in private practice or nongovernmental employment, or (iii) with respect to which the interests of the appropriate government agency are materially adverse to the interests of a private party represented by the lawyer while in private practice or

A-0291-23

> nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter or unless the private party gives its informed consent, confirmed in writing . . . .

RPC 1.11 also prohibits a government lawyer from disclosing confidential information obtained while representing a private party. RPC 1.11(d)(1).

RPC 1.10(a) prohibits a lawyer associated with a firm from representing a client when any other lawyer in the firm would be precluded from doing so by RPC 1.9 or RPC 1.7.[1] That prohibition does not apply if the conflict is "based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." RPC 1.10(a). Additionally, RPC 1.10(c) provides that:

> When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified under RPC 1.9 unless:
>
> > (1) the matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility;

---

[1] RPC 1.7 prohibits a lawyer from representing a client where that representation would create a concurrent conflict of interest, except under certain defined circumstances.

A-0291-23

(2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.

RPC 1.11 and RPC 1.9 clearly prohibit Santiago from having any involvement in the prosecution of defendant. RPC 1.10 addresses imputing conflicts among lawyers in a private law firm. It does not expressly address government lawyers, such as prosecutors. The question then becomes whether the imputation in RPC 1.10 should be applied to a prosecutor, and in particular to a county prosecutor who oversees the county prosecutor's office.

No New Jersey case has expressly addressed whether the personal conflict of a county prosecutor should be imputed to the entire county prosecutor's office. Existing New Jersey caselaw makes clear that requests for disqualification of an entire prosecutor's office should be scrutinized and have rarely been granted. See State v. Harvey, 176 N.J. 522, 529-33 (2003) (reversing a trial court order disqualifying a prosecutor's office from handling a petition for post-conviction relief based on allegations of prosecutorial misconduct, primarily concerning one prosecutor); State v. Marshall, 123 N.J. 1, 176-78 (1991), cert. denied, 507

11

U.S. 929 (1993) (declining to disqualify a prosecutor's office based on a claim that the office had an "interest in vindicating its management of the discovery file" in a prior related case); State v. Irizarry, 271 N.J. Super. 577, 591, 601 (App. Div. 1994) (holding that an entire prosecutor's office need not be disqualified where some members of the office were familiar with immunized testimony or could be called as witnesses); see also State v. Marshall, 148 N.J. 89, 285, cert. denied, 522 U.S. 850 (1997) (declining to disqualify Attorney General from representing the State where the Director of the Division of Criminal Justice was First Assistant Prosecutor at the time of remand and defendant alleged prosecutorial misconduct). Thus, whether a prosecutor's personal conflict should be imputed to the entire county prosecutor's office is a question of first impression in New Jersey. Accordingly, we consider how other jurisdictions have addressed this issue.

Several states have adopted a per se rule of disqualifying the entire office where a member of the prosecutor's office previously represented a defendant in the same or a related matter. Many states that have employed this approach reason that a per se rule is required because it eliminates any appearance of impropriety and preserves public confidence in the criminal justice system. See State v. Nickels, 456 P.3d 795, 800 (Wash. 2020) (holding that where the county

prosecutor previously represented the defendant, "office-wide disqualification—not screening—is required to preserve the appearance of a just proceeding and the public's confidence in the impartial administration of justice"); People v. Stevens, 642 P.2d 39, 41 (Colo. App. 1981) (disqualifying entire prosecutor's office after attorney who formerly represented the defendant became employed by prosecutor's office, and noting that "[t]he most compelling rationale for requiring the appointment of a special prosecutor is avoidance of the appearance of impropriety"); see also State v. Ross, 829 S.W.2d 948, 951 (Mo. 1992) (holding that where two members of law firm representing the defendant in a suit by an assault victim also worked part-time as assistant prosecutors, the entire prosecutor's office should be disqualified from handling the case against the defendant because those "interconnections" created "suspicions and appearances of impropriety").

Additionally, some states that have adopted this approach reason that the county prosecutor's supervisory authority over assistant prosecutors necessitates disqualification of the entire prosecutor's office. See People v. Lepe, 211 Cal. Rptr. 432, 434-35 (Cal. Ct. App. 1985) (explaining that because deputies were hired, evaluated, promoted, and fired by the district attorney, the court could not "say the office can be sanitized such to assume the deputy who prosecutes the

13

case will not be influenced by the considerations that bar [the district attorney] himself from participation in the case"); State v. Tippecanoe Cnty. Ct., 432 N.E.2d 1377, 1379 (Ind. 1982) (noting that "the prosecuting attorney exercises authority over and speaks through his deputies" in holding that disqualification of the entire prosecutor's office was required).

The majority of states that have considered this issue, however, have rejected a per se rule. Instead, most states have adopted a rule calling for disqualification of the entire office only when the prosecutor who formerly represented a defendant divulged confidential information to other prosecutors or participated in the prosecution of the defendant. See, e.g., State v. Camacho, 406 S.E.2d 868, 875 (N.C. 1991); State v. McKibben, 722 P.2d 518, 526 (Kan. 1986); Young v. State, 465 A.2d 1149, 1155 (Md. 1983); State v. Pennington, 851 P.2d 494, 500 (N.M. Ct. App. 1993) (adopting majority rule in case involving investigator who previously worked for the defendant before joining the prosecutor's office, and holding that the ruling applied to any employee of the prosecutor's office); see also United States v. Shah, 43 F.4th 356, 362-63 (3d Cir. 2022) (relying on the Pennsylvania Supreme Court's Rules of Professional Conduct in declining to disqualify entire United States Attorney's Office so long as supervisory attorney that previously represented the defendant remained

14

properly screened); <u>United States v. Goot</u>, 894 F.2d 231, 234-35, 237 (7th Cir. 1990) (declining to disqualify entire United States Attorney's Office where United States Attorney previously represented the defendant and had been properly screened); <u>see also</u> <u>State v. Kinkennon</u>, 747 N.W.2d 437, 444 (Neb. 2008) (noting that while "extreme case[s]" requiring disqualification of the entire prosecutor's office "might exist," screening of the disqualified attorney is generally sufficient and the entire office need not be disqualified).

In short, those states reasoned that the entire prosecutor's office need not be disqualified if the prosecutor who had a prior relationship with the defendant is effectively screened from participation in the prosecution and does not divulge any confidential information. <u>Camacho</u>, 406 S.E.2d at 875; <u>McKibben</u>, 722 P.2d at 526; <u>Young</u>, 465 A.2d at 1155; <u>Pennington</u>, 851 P.2d at 500; <u>Kinkennon</u>, 747 N.W.2d at 444. We note that while many states have adopted the majority rule on this issue, only some have expressly clarified that the rule applies the same way to the county prosecutor or district attorney as it does to other attorneys employed by the prosecutor's office. <u>See, e.g.</u>, <u>Camacho</u>, 406 S.E.2d at 875.

We believe that the majority rule is the better rule and is more consistent with New Jersey caselaw. The RPCs treat lawyers in private practice differently than lawyers in government service. <u>See</u> RPC 1.10; RPC 1.11; <u>see also</u> State v.

15

<u>Bell</u>, 90 N.J. 163, 168 (1982). There are sound public policy reasons for that distinction. Moreover, our Supreme Court has reasoned that disqualifying an attorney or an office of attorneys based on a conflict "must have some reasonable basis" grounded in an actual conflict. <u>Harvey</u>, 176 N.J. at 529 (quoting <u>In re Op. No. 653 of the Advisory Comm. on Pro. Ethics</u>, 132 N.J. 124, 132 (1992)).

In that regard, in 2006, our Supreme Court decided that New Jersey would not consider the appearance of impropriety in determining whether a lawyer has a disqualifying conflict. <u>See</u> <u>In re Sup. Ct. Advisory Comm. on Pro. Ethics Op. No. 697</u>, 188 N.J. 549, 568 (2006). The Court explained that the concept of the appearance of impropriety should not be considered in determining whether a conflict of interest exists under RPC 1.9 as its use "injects an unneeded element of confusion." <u>Id.</u> at 562 n.5.

We, therefore, adopt the majority rule and conclude automatic disqualification of the entire prosecutor's office is not required. Instead, this rule requires disqualification of the entire prosecutor's office only where the prosecutor was not effectively screened or has shared confidential information he or she learned while representing the defendant. In short, our analysis of the law on conflicts and our consideration of the policies embodied in the RPCs

16

support a rule where individual, personal conflicts of county prosecutors are not imputed to the entire office.

Moreover, we adopt the majority rule with respect to both prior representation by assistant county prosecutors and the county prosecutor. A more flexible rule is particularly well-suited in New Jersey because the State Attorney General has ultimate supervision over county prosecutors. While the county prosecutor supervises the county office, the county prosecutors and the county prosecutors' offices are ultimately subject to the Attorney General's supervision and control. N.J.S.A. 52:17B-103; see also Yurick v. State, 184 N.J. 70, 79-80 (2005) (explaining the Attorney General's supervisory powers over county prosecutors). Consequently, the Attorney General may supervise a county prosecutor and his or her office and, where appropriate, decide to step in and take over a prosecution. N.J.S.A 52:17B-106 to -107; Wright v. State, 169 N.J. 422, 438 (2001) (explaining that "'the Attorney General's supersedure power appears to have been bestowed with the understanding that it was intended to ensure the proper and efficient handling of the county prosecutors' "criminal business"'" (quoting Coleman v. Kaye, 87 F.3d 1491, 1501 (3d Cir. 1996))). So, unlike the situations where other states have adopted a per se rule, in New Jersey the county prosecutor is not the ultimate supervisor because that

responsibility rests with the Attorney General. Thus, we are satisfied that the Attorney General's supervision over county prosecutors will ensure that complete disqualification of the entire prosecutor's office is not necessary so long as the county prosecutor is properly screened and has no oversight of the matter.

B.    Whether the MCPO Should Be Disqualified Based on Santiago's Prior Representation of Defendant.

Having declined to adopt the per se rule requiring disqualification of an entire prosecutor's office, we hold that the MCPO need not be recused from continuing to prosecute defendant and his co-defendants, provided Santiago continues to be completely screened from the prosecution and does not share any confidential information he learned while he represented defendant. Santiago has been screened from this case since he began acting as county prosecutor, and he has had no communications about this case with the MCPO prosecutors and investigators assigned to it. Therefore, we conclude that his prior representation of defendant in this matter does not create a conflict requiring disqualification of the MCPO in its entirety.

C.    Defendant's Other Arguments.

Given our holding that New Jersey will apply a fact-specific and personal disqualification rule for prosecutors, defendant's remaining arguments can be

analyzed and rejected summarily. In analyzing the rationales for the majority and minority rules in other jurisdictions, we have effectively analyzed and rejected defendant's principal arguments concerning the appearance of impropriety and Santiago's role as a supervisor.

Defendant also argues that Santiago or the MCPO was obligated to obtain defendant's and the Attorney General's Office's consent. The RPCs prohibit a government lawyer from participating in matters "in which the lawyer participated personally and substantially" or "had substantial responsibility" while in private practice, or where the interests of the government agency "are materially adverse to the interests of a private party" the lawyer represented while in private practice, unless the lawyer obtains the affected former client's informed consent. RPC 1.11(d)(2). The MCPO has represented that it consulted with the Attorney General when Santiago first became Acting Monmouth County Prosecutor and Santiago has always been screened from matters where he had previously represented a defendant. That screening eliminates the conflict, and thus the need to obtain defendant's consent. We see no reason to impose a rule that would require Santiago or the MCPO to notify all defendants Santiago had previously represented who are now being prosecuted by the MCPO.

In making that ruling, we, like the trial court, accept the representations of the MCPO. Defendant questions whether those representations should be accepted and suggests that discovery and fact-finding on whether Santiago was properly screened may be necessary. Absent a showing of a specific factual concern, we reject defendant's argument because it is based on speculation.

Finally, we need not address the separation of powers issue. Defendant pointed out that the trial court noted that the doctrine of separation of powers supported its ruling because to require recusal of the entire MCPO would effectively be to direct the Attorney General's Office to supersede the MCPO in the prosecution of this matter. Given that we have held that there is no reason to disqualify the entire MCPO, we do not reach that issue.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0291-23