**STATE of Tennessee, Appellee,**

v.

**Richard Arthur TATE, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 20, 1995.

Mark E. Stephens, District Public Defender, R. Scott Carpenter, Asst. Dist. Public Defender (at trial), Paula R. Voss, Asst. Dist. Public Defender, Knoxville (on appeal), Brandt W. Davis, Knoxville (at trial), for Appellant.

Charles W. Burson, Attorney General, Sharon S. Selby, Assistant Attorney General, Nashville, Randall E. Nichols, District Attorney General, Robert L. Jolley, Jr., Asst. Dist. Attorney, Knoxville, for Appellee.

## OPINION

WADE, Judge.

The defendant, Richard Arthur Tate, was indicted by the Knox County Grand Jury for first degree murder, felony murder, aggravated burglary, aggravated assault, aggravated kidnapping, and theft. Prior to trial, the trial court overruled a defense motion requesting that the Knox County District Attorney General's Office be disqualified from the prosecution. In this interlocutory appeal, the defendant asks this court to reverse the order because of the District Attorney General's prior participation in the case as trial judge.

We hold that in these unique circumstances neither the Knox County District Attorney General nor his staff should participate in the prosecution. The order of the trial court is reversed, the motion to disqualify is granted, and the cause is remanded for trial.

The facts do not appear to be in dispute. On April 5, 1990, Knox County Criminal Court Judge Randall Nichols signed the several indictments returned by the grand jury against the defendant. For a period of two years thereafter, Judge Nichols from time to time presided over pretrial proceedings until he was appointed to the position of District Attorney General for Knox County in August of 1992. Prior to his appointment to the new office, Judge Nichols ruled on several motions, all of which appear to have been routine. A transcript of one of the motion hearings, which was made a part of this record, establishes that on one occasion Judge Nichols questioned the defendant in open court during a hearing on a motion by his counsel to withdraw from representation. The record also includes evidence that defense counsel made several *ex parte* appearances before Judge Nichols in an effort to obtain the funds necessary for the assistance of expert services. Defense counsel specifically recalled two *ex parte* communications on motions that had been filed; he remembered several brief *ex parte* status reports to Judge Nichols. Some of the information revealed by defense counsel in the private hearing had been provided by the defendant or members of his family.

After Judge Nichols resigned his judicial office to become the Knox County District Attorney General, he had as many as four lengthy discussions with the assistant district attorney general assigned to prosecute the defendant. The assistant acknowledged that he had engaged in several other brief conversations with General Nichols about the case; however, both General Nichols and his assistant asserted that they had not discussed any facts not already known to the prosecution prior to the appointment of General Nichols to his new office. Moreover, General Nichols, who presided over hundreds of cases during his tenure as judge, testified that he did not recall receiving any information in the *ex parte* communications with the defendant which was not otherwise available to the state through other means.

The trial court overruled the defense motion to disqualify on the basis that there was no actual conflict of interest. It held that the participation of General Nichols in the prosecution did not present the appearance of impropriety. The trial court then granted the defendant an interlocutory appeal pursuant to Tenn.R.App.P. 9.

█ Typically, the decision to disqualify a prosecutor or his office rests in the sound discretion of the trial judge. On appeal, the

scope of review is limited. This court may only determine whether there has been an abuse of the discretionary authority afforded the trial court. *See State v. Phillips*, 672 S.W.2d 427 (Tenn.Crim.App.1984).

The defendant has presented a three-part argument in his claim of disqualification: (1) there is an actual conflict of interest requiring recusal of the office of the district attorney general; (2) even if no actual conflict of interest is present, the appearance of impropriety is so great as to require recusal of General Nichols; and (3) the circumstances here are such that the removal of the entire office is required.

The initial response of the state is that this is not an appropriate matter for interlocutory review and that this court should reconsider its grant of permission for interlocutory appeal. Alternatively, the state argues that there is no actual conflict of interest and that neither the district attorney nor his staff should be disqualified on grounds of the appearance of impropriety. We first hold that this matter is appropriate for interlocutory review; adequate grounds appear in our order of May 20, 1994. Thus, we must address the merits of the claim.

## BACKGROUND

There was almost no legal authority available to guide the trial court, the district attorney, or defense counsel. While a few cases pertain to conflicts involving private counsel or assistant district attorneys, the issue of whether a district attorney general may prosecute a case after having been involved as a judicial officer is one of first impression in Tennessee. In determining whether the district attorney should have been disqualified in a particular instance, this court first must consider whether the circumstances establish an actual conflict of interest; if so, there must be a disqualification. If there is no actual conflict, we must next consider whether there is an appearance of impropriety that would warrant disqualification. That would also result in a disqualification. If disqualification is required under either theory, the final consideration is

whether the entire staff of the district attorney general's office must also be disqualified.

Our extensive research has yielded few cases in which there were similar facts. In *Ross v. State*, 8 Wyo. 351, 57 P. 924, a case decided in 1899, the trial court refused to reverse a conviction based upon the trial court's failure to disqualify a former district judge, whose only prior contact was that he had previously denied the defendant bail sometime after his arrest, from later assisting in the prosecution. The decision was based solely upon the lack of prejudice to the defendant: the "conclusion [did not follow] that [the former judge] was prejudiced against the defendant except in the sense that from the evidence examined by him he may have formed an opinion that the defendant was guilty of the offense charged." The decision in *Ross* is an example of the most lenient approach to a possible conflict of interest.

In *Commonwealth v. Ford*, 539 Pa. 85, 650 A.2d 433 (Pa.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995), the defendant claimed that a conflict of interest existed because the trial judge assigned his case had become the district attorney of the county after the verdict but before post-verdict proceedings had been initiated.[1] The defendant, however, failed to establish any conflict of interest because the district attorney "disqualified and screened herself from any participation in this matter, and in fact, in any matter in which she [had] presided as a jurist." *Id.* at 106, 650 A.2d at 443. This case illustrates a more standard approach to possible conflicts of interest.

The general conduct of attorneys is governed by the Code of Professional Responsibility. While the disciplinary rules "do not fully equate with the body of law governing courts, trials and the administration of the justice system," the Code often provides guidance in our determinations. *State v. Willie Claybrook*, No. 3, 1992 WL 17546 (Tenn.Crim.App., at Jackson, Feb. 5, 1992), *perm. to appeal denied*, (Tenn.1992); *see State v. Jones*, 726 S.W.2d 515, 519 (Tenn.

---

**1.** The opinion dedicates only one paragraph to this issue. Our inference is that the trial judge became district attorney in the period between the verdict and the motion for new trial.

1987); *State v. Mosher,* 755 S.W.2d 464 (Tenn.Crim.App.1988). Thus some consideration is warranted.

Our code is made up of three separate but interrelated parts: (1) Canons, (2) Ethical Considerations, and (3) Disciplinary Rules.

> The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession. They embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived.
>
> The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.
>
> The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. . . .

Tenn.Sup.Ct.R., Preliminary Statement.

Canon 9 of the Code provides that "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Tenn.Sup. Ct.R. 8, Canon 9. Ethical Consideration 9–3 more specifically addresses what an attorney can do when he or she leaves judicial office or other public employment. EC 9–3 provides as follows:

> After a lawyer leaves judicial office or other public employment, the lawyer should not accept employment in connection with any matter in which the lawyer had *substantial responsibility* prior to leaving, since to accept employment would give rise to the appearance of impropriety *even if none exists.*·

(Emphasis added). The general language of EC 9–3 provides that district attorneys must determine whether their prior participation in an action as a judicial officer qualified as "substantial responsibility." In a situation where a judicial officer later acted as counsel in a related matter, the Board of Professional Responsibility made the following recommendation:

> When the attorney has acted in a judicial capacity on limited occasions and assessed court costs and then brings a class action to recover such costs this constitutes a violation of the axiomatic norm of conduct expected of attorneys in their relationship with the public. Canon 9 of the Code of Professional Responsibility, "Avoiding Even the Appearance of Impropriety" should be *strictly construed in such instances and no practice must be permitted which invites doubt or distrust of the integrity in our law, our courts and in the administration of justice.*

(Emphasis added).

An ethics opinion by the American Bar Association describes "substantial responsibility" in the context of a lawyer changing from one job to another:

> As used in DR 9–101(B), "substantial responsibility" envisages a much closer and more direct relationship than that of a mere perfunctory approval or disapproval of the matter in question. It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative or deliberative processes regarding the transactions or facts in question. Thus, being the chief official in some vast office or organization does not ipso facto give that government official or employee the "substantial responsibility" contemplated by the rule in regard to all the minutiae of facts lodged within that office. Yet it is not necessary that the public employee or official shall have personally and in a substantial manner investigated or passed upon the particular matter, for it is sufficient that he had such a heavy responsibility for the matter in question that it is unlikely he did not become personally and substantially involved in the investigative or deliberative processes regarding that matter. With a responsibility so strong and compelling that he probably became involved in the investigative or decisional processes, a lawyer upon leaving the gov-

ernment service should not represent another in regard to that matter.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 342 (1975) (footnotes omitted) (also found at 62 A.B.A.J. 517).

While the decision of the Board of Professional Responsibility and the ABA opinion provide some guidance, the mandatory Disciplinary Rules fail to expressly address the factual scenario presented here. For example, DR 9–101 is as follows:

**Avoiding even the Appearance of Impropriety.—**

(A) A lawyer shall not accept *private* employment in a matter upon the merits of which the lawyer has acted in a judicial capacity.

(B) A lawyer shall not accept *private* employment in a matter in which the lawyer had substantial responsibility while the lawyer was a public employee.

(C) A lawyer shall not state or imply that the lawyer is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official.

(Emphasis added). Obviously, this disciplinary rule applies only to those instances where a person who has formerly been a judge or public employee attempts to undertake private employment on the same or a related case. The rule makes no direct reference to subsequent public employment. The district attorney general is, of course, a public officer.

The Code of Judicial Conduct appears in Rule 10 of the Tennessee Supreme Court Rules. Although the Code of Judicial Conduct does not apply to the position of district attorney general, it does govern those persons who hold a full- or part-time judicial office. Those principles are helpful here. Canon 8 of the Code of Judicial Conduct provides that a part-time judge or a judge pro tempore "should not act as a lawyer in a proceeding in which he has served as a judge or in any other proceeding related thereto." This language suggests that a person who has served in a judicial capacity should not later act as counsel, whether public or private, on the same case or one related to it.

No disciplinary rule strictly prohibits an attorney from leaving a judicial office and acting as the district attorney general in the prosecution of a case that had been pending on the docket. Yet the Code provisions certainly suggest that careful scrutiny should be given the degree of the involvement of the judicial officer in a case when, after leaving office, that judge participates in the prosecution of the same case. The "substantial responsibility" test, as to whether a judge who leaves office should be disqualified from serving as counsel in subsequent proceedings, has considerable merit. That is, whether the prior level of participation in a case as judge was so substantial as to require disqualification. There is no bright-line test in these kinds of cases, however. Any analysis must be on a case-by-case basis.

### ACTUAL CONFLICT OF INTEREST

The state concedes that it would be necessary for the district attorney general to be disqualified if an actual conflict of interest had been established. *See ABA Standards for Criminal Justice Prosecution Function and Defense Function* 3–1.3 (3d ed. 1993) (hereinafter *ABA Prosecution Function*). In *State v. Phillips,* 672 S.W.2d 427 (Tenn.Crim. App.1984), for example, an actual conflict of interest (participation in a case first as a defense lawyer and thereafter providing some "clerical" assistance to the prosecution) resulted in the reversal of a conviction even though no prejudice had been shown. The defendant asserts that while the district attorney general may not have received confidences directly from the defendant while acting as judge, he did receive some confidences through the representations of defense counsel by presiding over the statutorily authorized *ex parte* motions for expert services. *See* Tenn.Code Ann. § 40–14–207(b). The state counters that no actual conflict of interest has been shown in this instance.

An actual conflict of interest is usually defined in the context of one attorney representing two or more parties with divergent interests. A test for determining a disqualifying conflict in that situation is whether the attorney "made a choice between possible alternative courses of action

[that were] helpful to one client but harmful to the other." *Thomas v. Foltz,* 818 F.2d 476, 481 (6th Cir.), *cert. denied,* 484 U.S. 870, 98 L.Ed.2d 149 (1987) (citing *United States v. Mers,* 701 F.2d 1321 (11th Cir.1983)). The term has been described as "a situation in which regard for one duty tends to lead to [the] disregard of another." *State v. Reddick,* 230 Neb. 218, 222, 430 N.W.2d 542, 545 (1988); *see Gardner v. Nashville Housing Authority,* 514 F.2d 38 (6th Cir.), *cert. denied,* 423 U.S. 928, 96 S.Ct. 274, 46 L.Ed.2d 255 (1975). In *Ford v. Ford,* 749 F.2d 681, 682 (11th Cir.), *cert. denied,* 474 U.S. 909, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985), the court declared a conflict of interest when an "attorney was placed in a position of divided loyalties." Once an actual conflict of interest is shown, disqualification is the appropriate remedy. *See Moran v. State,* 4 Tenn.Crim. App. 399, 472 S.W.2d 238 (1971).

At the hearing in this case on the motion to disqualify, defense counsel and the district attorney testified that while they recalled discussing general topics during the *ex parte* hearings, neither could remember any major confidences that may have been divulged. Defense counsel testified that his *ex parte* discussions with then Judge Nichols pertained to the defendant's mental state, his "mental retardation, his sanity or insanity, and just general conversations about him and his condition, what he was like, what we were doing...." He stated that he disclosed to Judge Nichols information he had received from the defendant, the defendant's family, and the defendant's prior counsel. Defense counsel acknowledged, however, having made an earlier, similar motion in the Knox County Sessions Court, revealing much of the same evidence presented in the *ex parte* hearing in the Criminal Court before Judge Nichols; defense counsel could not recall, however, whether Judge Nichols had heard any additional information in the *ex parte* hearing which had not been divulged at that earlier proceeding. Neither, of course, could speculate upon whether future developments in the case might trigger the recollection of any confidences that had been shared during the various proceedings that had previously taken place.

From this limited information, we cannot conclude that General Nichols, in his prior capacity as trial judge, acquired specific information that would be especially helpful to the state or would otherwise prejudice the defendant's right to a fair trial. That is, there is inadequate proof, given our limited scope of review, to establish that General Nichols had acquired confidential information as judge which would have assisted the prosecution to the detriment of the defense. The state does not appear to have gained any tactical advantage by the unusual circumstances. Prejudice, however, is not a workable test:

> For this Court or any court to attempt to weigh or measure actual prejudice would require "unguided speculation." A conviction obtained under these circumstances simply cannot stand regardless of prejudice to the accused and regardless of his guilt or innocence.

*State v. Phillips,* 672 S.W.2d 427, 436 (Tenn. Crim.App.1984).

 In *Phillips,* this court held there was an actual conflict of interest when an attorney who had shared confidential information by providing some assistance to the defense accepted employment as an assistant district attorney general at some point before the trial:

> It has long been firmly established, both in the Canons of Professional Ethics and by judicial opinions, that attorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. *When an attorney has once been engaged and received the confidences of his client, he cannot enter the services of those whose interests are adverse to that of his client or former client.* The rule is a rigid one, and it is well that it is so. An attorney cannot be permitted to participate in the prosecution of a criminal case if, by reason of his professional relation with the accused, he has acquired knowledge of facts upon which the prosecution is predicated, or which are closely interwoven therewith.

*Id.* at 430–31 (quoting *Autry v. State,* 1 Tenn. Crim.App. 95, 430 S.W.2d 808, 809 (1967) (emphasis added)). There is a distinction here in that Judge Nichols had not acted on

behalf of the defense. The duty of the trial judge is as a neutral arbiter, without allegiance to either side. "[The judge] has only to judge fairly and impartially of the complaint of the state against the defendant and of the defense, or defenses, made thereto." *State v. Costen*, 141 Tenn. 539, 213 S.W. 910 (1919). "The courts, whose duty it is to administer the law, must apply the applicable law of the state whether they deem the law to be wise or unwise." *State v. Watkins*, 607 S.W.2d 486 (Tenn.Crim.App.1980). The judge has no client. Thus, this is not a case wherein General Nichols had previously been a party with "divergent interests."

On the other hand, had Judge Nichols received the same confidential information while assisting as counsel for the defense, the holding in *Phillips* would certainly preclude his later participation in the prosecution. A confidence has been defined as any "information protected by the attorney-client privilege under applicable law." Tenn.Sup.Ct.R. 8, DR 4–101. Our statutory scheme places the duty upon the trial judge to determine in an *ex parte* setting whether expert services are "necessary to [protect] the constitutional rights of the defendant." Tenn.Code Ann. § 40–14–207(b). Thus, in his previous capacity as judge, General Nichols was privy to confidential, case-related communications—at least in the sense that the state was not entitled to receive the information. *See State v. Barnett*, 909 S.W.2d 423 (Tenn.1995) ("defendants [seeking expert assistant] . . . should not be required to reveal their theory of defense when [the prosecution] . . . [is] not required to"). By the same rationale used to disqualify a defense attorney who receives a client's confidences and then later desires to assist the prosecution, the trial judge who subsequently becomes the district attorney general should also be disqualified. Conflicts of interest may extend beyond the parties involved in the dispute. Those in the legal profession may "not undertake to discharge inconsistent duties" either. *Mattress v. State*, 564 S.W.2d 678 (Tenn.Crim.App.1977).

In *State v. Willie Claybrook*, No. 3, 1992 WL 17546 (Tenn.Crim.App., at Jackson, Feb. 5, 1992), the defendant sought to disqualify the district attorney's office because Assistant District Attorney Camp had been associated in practice with the attorney who served as the defendant's counsel in his first two trials. Like Tate, the defendant in *Claybrook* failed to present evidence of any specific confidences that Camp received. The proof, however, showed that Camp had been present during a meeting between the defendant and his attorney when they discussed a plea offer and whether the defendant might testify. The assistant testified that his only recollection of the communication with the defendant was the defendant's denial of guilt. In affirming Camp's disqualification, this court did not rely on any presumption of shared confidences within his law firm but instead held as follows:

> Mr. Camp's presence at the one conference with the defendant needs no presumption—he was privy to confidential case-related communications. Under these circumstances, *the courts should not be concerned with the substance of the communication, only the fact that the communication occurred.* To require otherwise would necessitate the attorney or the defendant disclosing the very information deemed privileged.

*Id.* at 16 (emphasis added).

Camp's exposure to confidential case-related communications created a conflict of interest which disqualified him from participating in the defendant's prosecution. Because General Nichols had also been privy to confidential case-related communication from the defense, although in an entirely different capacity, he has a similar conflict of interest and should likewise be disqualified, regardless of the substance of the communications. That holding is also consistent with the decisions made in the *Mattress* and *Phillips* cases.

From all of this, we must hold that the record has established an actual conflict of interest. In our view, there was an actual conflict of interest because General Nichols had, while judge, received confidential communications in the statutorily authorized *ex parte* proceedings. Disqualification must result.

## APPEARANCE OF IMPROPRIETY

We now turn to the claim that the mere appearance of impropriety, because of divergent official duties, also requires the disqualification of the district attorney general from any involvement in the prosecution. The ethics of the legal profession require lofty standards of conduct. Attorneys must not only avoid impropriety but even the appearance of impropriety. Tenn.Sup.Ct. Rule 8, Canon 9. In our view, that "goes double" for an attorney who has acted as judge:

> Anything that reflects upon the majesty of the law and the absolute and complete impartiality of those that conduct trial proceedings, must be avoided scrupulously. We cannot allow public confidence in the complete fairness and impartiality of our tribunals to be eroded and nothing which casts any doubt on the fairness of the proceedings should be tolerated.

*Virgyl D. Johnson v. McReynolds,* No. 35, 1990 WL 204298 (Tenn.Ct.App., at Jackson, Dec. 17, 1990).

Had General Nichols left his judicial position to become defense counsel, the disciplinary rules would have required that he recuse himself from any participation in the case. *See* DR 9–101. On the "good-for-the-goose theory" alone, that would inevitably lead us to the conclusion that ethical precepts preclude a former judge from prosecuting a case over which he or she presided, even when there has been no showing of an actual conflict of interest.

The state argues that the decision in *Johnson* should be given limited consideration because the attorney at issue had become a judge; while that would have required recusal under the Code of Judicial Conduct, the reverse situation, the state contends, does not. *See* Tenn.Sup.Ct.R. 10, Canon 3. Certainly, there are factual differences between the circumstances here and those in *Johnson.* Moreover, the Code of Judicial Conduct does not apply to the position of district attorney general. A district attorney general is, however, guided by standards other than those contained in the Code of Professional Responsibility. For example, as early as 1935 the United States Supreme Court outlined the role of the U.S. Attorney, the federal counterpart of the district attorney:

> [He] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); *see also* EC 7–13; Tenn.Sup.Ct.R. 8, Code of Professional Responsibility. While these words do not necessarily apply to the facts presented here, the holding illustrates that the district attorney general, as the representative of the people in state criminal prosecutions, must always endeavor to promote the public confidence in the integrity and impartiality of the criminal justice system. *See ABA Prosecution Function* at Standard 3–1.2.

When considered in light of these various standards, these facts, in our view, also establish an appearance of impropriety. This is so even though the defense has been unable to establish any prejudice. Defense counsel has been highly complimentary of the role General Nichols has played in the prosecution thus far. By all appearances, the issue has been raised more as a precautionary measure than as a professional complaint. Nonetheless, a judge who has rendered rulings on motions of substance pertaining to a defendant under indictment or otherwise considered matters in a statutorily authorized *ex parte* setting should not, on ethical grounds, later assume the function of prosecutor on the same charges.

█ Because the district attorney here had heard and ruled upon several motions as

judge, because certain of the motions were of a confidential nature (even though the information discussed has apparently come into the hands of the state by other means), and because at least one hearing included questions addressed directly to the defendant by the trial judge, disqualification appears to be the proper remedy based upon either actual conflict or the mere appearance of impropriety.

## DISQUALIFICATION OF OFFICE

Having determined that either the actual conflict of interest or the appearance of impropriety requires the disqualification of the district attorney general, we must now consider whether it is necessary to disqualify his staff from participation in the prosecution. Although the general rule governing disqualification due to either an actual or apparent conflict would not usually bar the entire office from prosecuting the defendant, we think that more extreme action is required in these particular circumstances.

In *State v. McKibben,* 239 Kan. 574, 722 P.2d 518 (1986), the Kansas Supreme Court addressed the "appearance of impropriety" issue. The defendant was initially represented by an attorney who later accepted a job as an assistant prosecutor. The trial court disqualified an assistant district attorney from any participation in the case but allowed the staff to proceed with the prosecution. The defendant challenged the ruling asserting that the proposed remedy was "not a sufficient precaution to insure public confidence and avoid the appearance of impropriety." The supreme court ruled as follows:

> Some states have adopted a per se disqualification rule, i.e., the mere appearance of impropriety alone is enough to warrant disqualification of an entire prosecuting office based on one member's prior representation of the defendant in the same prosecution. Disqualification is necessary irrespective of whether confidences were breached or prejudice to the defendant resulted....
>
> *A majority of the jurisdictions, however, have refused to adopt such a blanket rule.* These courts look at the circumstances of the particular case to determine whether

confidences have been breached resulting in prejudice to the defendant, and whether the defendant's former attorney participated in any way in prosecuting the defendant. If any impropriety is found, the entire office must be disqualified. The trial court makes such a determination and absent an abuse of discretion the appellate court will not reverse....

> The American Bar Association committee on professional ethics has also ruled that *it is not necessary to disqualify the entire governmental office. The individual lawyer should be screened from having direct or indirect participation in the matter and communication with colleagues concerning the prosecution is prohibited.*

239 Kan. at 581–82, 722 P.2d at 525–26 (citations omitted). (Emphasis added.)

In *Mattress v. State,* 564 S.W.2d 678 (Tenn.Crim.App.1977), our court adopted the majority view that the entire district attorney general's office need not be disqualified so long as the attorney at issue does not disclose confidences or otherwise participate in the prosecution. 564 S.W.2d at 680. The rationale for the decision in *Mattress* might have been based upon the following passage:

> So long as the individual lawyer is held to be disqualified and is screened from any direct or indirect participation in the matter, the problem of his switching sides is not present; by contrast, an inflexible extension of disqualification throughout the firm often would result in real hardship to a client if complete withdrawal of representation was mandated, because substantial work may have been completed regarding specific legislation prior to the time the government employee joined the partnership, or the client may have relied in the past on representation by the firm.

ABA Formal Op. 342 (1975).

Early and adequate screening in the case of actual conflict or the appearance of impropriety should usually resolve a problem such as this. Moreover, the Sixth Circuit has also recognized that "[t]here is ... quite a difference in the relationship between law partners and associates in private law firms and lawyers representing the government." *United*

*States v. Caggiano,* 660 F.2d 184, 190 (6th Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1444, 71 L.Ed.2d 658 (1982) (no prejudice was shown so entire U.S. Attorney's office was not disqualified when disqualified Assistant U.S. Attorney, properly screened, formerly represented defendant). In Formal Ethics Opinion 87–F–111, the Board of Professional Responsibility of this state recommended that "the question concerning the vicarious disqualification of the entire staff of a District Attorney General when one member of the staff is disqualified should be examined and determined by the court on a case-by-case basis." The Board has approved the use of appropriate screening procedures to rebut the presumption of shared confidences in cases where counsel changes adversarial sides in the same or related cases. Formal Ethics Op. 89–F–118; *see Manning v. Waring, Cox, James, Sklar, and Allen,* 849 F.2d 222, 225–26 (6th Cir.1988); *see also Commonwealth v. Ford,* 539 Pa. 85, 650 A.2d 433, 443 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995).

■ Here, we begin with our finding that there was an actual conflict of interest; while the information revealed in the *ex parte* proceeding may have otherwise come to the attention of the state through one source or another, a confidence had been shared with General Nichols in his capacity as trial judge. That is an actual conflict, in our view, even though there was no evidence that General Nichols and his staff have thus far exercised their duties in anything other than "an even-handed manner." *See People v. Conner,* 34 Cal.3d 141, 193 Cal.Rptr. 148, 666 P.2d 5 (1983).

General Nichols has candidly acknowledged that no attempts had been made to screen his involvement in the prosecution. He has maintained the role of supervisor. On several occasions, he has openly discussed the case with the assistant district attorney or attorneys assigned to undertake the prosecution. Because the burden of proof must rest upon the state to establish that appropriate screening measures have been taken and because no precautions whatsoever have been taken during the course of the prosecution, the result here is inevitable. A former judge who, in his previous capacity, had undertaken substantial responsibility in the disposition of a case, and who later supervises the prosecution of that individual, gives rise to the appearance of impropriety. When, as judge, the district attorney received confidential information, even if not prejudicial to the defense, there is an actual conflict. The failure to later screen himself from participation irretrievably taints those employed in his newer office.

In *Phillips,* a disqualified assistant district attorney had received confidential communications directly from the defendant during the course of his prior representation. Afterward, he had assisted the state in their preparation for trial. Under these facts, the court not only held that disqualification of the district attorney was required but also that the entire office was disqualified. The district attorney general pro tempore appointed to the case could not obtain any contents of files generated after the employment of the assistant district attorney.

The facts here, of course, are different. A trial judge does not have the same duties as defense counsel. There is a lesser degree of shared confidences. Nonetheless, the statutory exclusion of the state from the pretrial communications between the defense and the trial judge consummates the analogy:

> When an accused's attorney joins the prosecution, the appearance of impropriety is not the central concern. Primarily, it is a matter of an unacceptable *risk* of harm or disclosure which is at issue. In focusing on the risk of harm or disclosure, as opposed to requiring proof of actual harm or disclosure, we acknowledge that, generally, an accused has no means to determine if a breach has occurred or if prejudice has resulted within a prosecutor's office.
>
> In this vein, once a defendant has shown a *substantial relationship* existing between the pending case and the matter in which the challenged attorney was previously representing the defendant, there should be a *presumption that the challenged attorney shared information with his new associates* in the attorney general's office. Further, to avoid disqualifica-

tion, it should be incumbent upon the state to prove by *clear and convincing evidence that the challenged attorney has been sufficiently screened from the remainder of the staff and its work on the pending case.*

*State v. Willie Claybrook,* No. 3, 1992 WL 17546 (Tenn.Crim.App., at Jackson, Feb. 5, 1992) (Emphasis added.) The principles enunciated in *Claybrook* 1992 WL 17546 apply here.

In these particular circumstances, the more cautious approach is to disqualify the office and appoint an entirely new prosecution team. That preserves the integrity of the criminal justice system. No screening measures have been taken. There is a presumption of shared confidences. *Id., see Manning v. Fort Dep. Bank,* 619 F.Supp. 1327, 1332 (W.D.Tenn.1985). There has been no attempt to rebut that presumption. *See Manning v. Waring, Cox, James, Sklar, and Allen,* 849 F.2d at 225–26.

The perception of a fair trial is just as important as the reality. In our view, the only means of preserving the public confidence in the conduct of this trial is to require the appointment of an entirely new prosecution team. In accordance with the ruling in *Phillips,* only those materials acquired by the state prior to the participation of General Nichols can be made available to the office appointed to undertake the prosecution.

Accordingly, the order of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion.

TIPTON, J., and ROBERT E. BURCH, Special Judge, concur.