IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 13, 2001 Session

## KEVIN BURNS v. STATE OF TENNESSEE

**Interlocutory Appeal from the Criminal Court for Shelby County**
**No. P-21820    James C. Beasley, Jr., Judge**

---

**No. W2000-02871-CCA-R9-PD  - Filed August 9, 2001**

---

The petitioner, currently represented by the Office of the Post-Conviction Defender, was originally convicted of felony murder and sentenced to death.  The petitioner's conviction and sentence were affirmed on direct appeal.  *See* State v. Burns, 979 S.W.2d 276 (Tenn. 1998).  After the filing of a post-conviction relief petition, the post-conviction court granted the state's request to disqualify the Post-Conviction Defender since a member of the Post-Conviction Defender Commission was related to the victim of the crime.  In this interlocutory appeal, the petitioner argues: (1) there is no conflict of interest; and (2) if a conflict exists, it can be waived.  After a thorough review of the record, we conclude that (1) there is no actual conflict, and (2) any alleged impropriety may be waived by the petitioner after full disclosure.  We reverse and remand for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal by Permission; Judgment of the Criminal Court
Reversed; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., and CORNELIA A. CLARK, Sp. J., joined.

Donald E. Dawson, Post-Conviction Defender, and Marjorie A. Bristol, Assistant Post-Conviction Defender, Nashville, Tennessee, for the appellant, Kevin Burns.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and John W. Campbell and Thomas D. Henderson, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The Office of the Post-Conviction Defender (hereinafter "PCD") was created to provide representation to indigent persons convicted and sentenced to death.  Tenn. Code Ann. § 40-30-302.  The PCD must operate "consistent with professional standards and shall not compromise independent professional judgment, or create a professional or institutional conflict of interest, [or]

appearance of impropriety . . . or other violation of the Tenn. Code of Professional Responsibility . . .." *Id.*

The PCD's Office is controlled by a nine-member commission. *See* Tenn. Code Ann. § 40-30-303. The commission is responsible for appointing a qualified attorney as PCD, preparing an annual budget for the office of the PCD, administering the funds made available to the office, and overseeing the expenditure of the funds. Tenn. Code Ann. § 40-30-304(c), (d).

The PCD was appointed to represent petitioner, Kevin Burns, in his petition for post-conviction relief. Petitioner was originally convicted of first degree murder and sentenced to death. Approximately one year after the appointment, the state sought to disqualify the PCD alleging that one of the PCD Commission members was a cousin of the victim in this crime. The post-conviction court found the PCD had an actual conflict of interest, declared that the conflict was not waivable by petitioner, and disqualified the PCD. This interlocutory appeal followed.

## BACKGROUND

The underlying facts and procedural history relevant to this issue are undisputed. On November 4, 1999, the PCD was appointed to represent the petitioner on his petition seeking post-conviction relief. The affidavits of the Post-Conviction Defender and the petitioner indicate that the PCD actually began its involvement in this case in November 1998, a year before its appointment in the post-conviction proceeding, immediately after the Tennessee Supreme Court denied relief in the direct appeal. The PCD's affidavit also indicates that the PCD assisted in the filing of a petition to rehear with the Tennessee Supreme Court and a petition for writ of certiorari in the United States Supreme Court. It further indicated that the PCD assisted in the preparation of the *pro se* petition for post-conviction relief along with motions to appoint counsel and stay execution.

Carolyn Watkins, a member of the PCD Commission, was a second cousin once removed to the victim since the victim's grandmother was the first cousin of Watkins' grandfather. The victim's mother called Watkins on September 26, 2000, and inquired why witnesses were being subpoenaed. Watkins called the district attorney's office and was informed that the petitioner was seeking post-conviction relief. After Watkins' call, the state filed a motion to disqualify, which was subsequently granted by the trial court.

## HEARING ON MOTION TO DISQUALIFY

### A. Testimony

Carolyn Watkins testified at the disqualification hearing that she is currently employed with the Shelby County Office of Equal Opportunity Compliance; she is a member of the PCD's Commission; and at the time of the petitioner's trial, she was employed by the Shelby County Public

Defender's Office as a member of the capital defense team. It was her recollection that the Shelby County Public Defender's Office was never involved in the representation of the petitioner since Watkins was the cousin of the victim. She explained her relationship with the victim and his family, prior to the victim's murder, as follows: she had never met the victim; she met the victim's mother in 1992; she had previously known the victim's grandmother; and she saw the victim's grandmother approximately once every two years. Watkins stated that she "just ran into [the victim's grandmother and mother] in the hall" of the courthouse during the petitioner's trial. She further stated that she could not recall if she first learned of the victim's death during that meeting. Watkins stated that she did not "sit through the [petitioner's] trial," but she would periodically check on her relatives and "explain what was going on in the proceedings."

On September 26, 2000, almost two years after the Tennessee Supreme Court affirmed petitioner's death sentence, Watkins was contacted by the victim's mother inquiring why a trial witness was again being subpoenaed. Watkins then contacted the district attorney's office, was referred to the prosecutor in this case, learned for the first time of the post-conviction proceedings, learned that the PCD represented the petitioner, and informed the prosecutor of her position on the PCD Commission.

During examination by the court, Watkins stated that she merely explained the legal process to the victim's family during the trial. Additionally, Watkins stated that she did not recall conferring with the victim's family concerning the facts of the murder, defense strategies, plea negotiations, or the penalty phase of the trial. She further explained that the victim's family was primarily concerned with why the case was continued numerous times.

Watkins summarized the PCD Commission's duties to include: hiring, proposal of the budget, oversight of the budget, and policy suggestions. She stated that the commission meets approximately once or twice per year, often by telephone or video conferencing. When asked if the PCD's Office's continued representation of petitioner would affect her work on the commission, she stated that she "can't foresee how it would." She further expressed her strong belief in the rights of criminal defendants.

The petitioner also filed his own affidavit in which the details of the alleged conflict were fully disclosed; he stated he understood the details of the dispute involving the alleged conflict; he stated he had developed trust in the PCD; he expressed his desire that the PCD continue to represent him; and he waived any conflict. Time records documenting over 1500 hours of work performed by the PCD staff were also filed as part of the record. The affidavit of the PCD indicates that the distant familial relationship between Watkins and the victim would have no effect on the representation of petitioner.

## B.  Trial Court's Findings

At the hearing, the trial court indicated that Watkins' relationship to the victim's family created both an "appearance of a possible conflict" and an actual conflict. In its written order, the

trial court found that the relationship created an actual conflict which required disqualification, and the trial court further implicitly found that the conflict could not be waived by the petitioner.

## CONFLICT

### A. Standard of Review

Pursuant to its inherent authority, our supreme court promulgated the disciplinary rules defining and regulating ethical requirements applicable to practicing attorneys. *See* Clinard v. Blackwood, __S.W.3d__, __, 2001 WL 530834, at *2 (Tenn. May 18, 2001); Tenn. Sup. Ct. R. 8. A trial court's ruling on the disqualification of counsel will be reversed only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the complaining party. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). Our supreme court stated:

> As the above authorities suggest, this Court owes a special obligation to ensure proper application of our rules and administration of the legal profession. Our review of a lower court's interpretation of the ethical rules promulgated by this Court is plenary. *See* In re: Burson, 909 S.W.2d 768, 774 (Tenn. 1995); Belmont v. Bd. of Law Examiners, 511 S.W.2d 461, 462 (Tenn. 1974); Anderson, 676 S.W.2d at 333-34. Accordingly, we will closely scrutinize a trial court's disqualification of an attorney or that attorney's firm for an abuse of discretion arising from improper interpretation or application of our rules. Accord Cheves v. Williams, 993 P.2d 191, 205 (Utah 1999) ("The proper standard of review for decisions relating to disqualification is abuse of discretion. However, to the extent this court has a special interest in administering the law governing attorney ethical rules, a trial court's discretion is limited.").

Clinard, __ S.W.3d at __, 2001 WL 530834, at *2.

### B. Applicable Ethical Requirements

The presented issue involves the application and interaction of two separate and distinct ethical requirements; namely, Tenn. Sup. Ct. R. 8, Canon 5, DR 5-101(A) (refusing employment when the interests of the lawyer may impair the lawyer's independent professional judgment), and Tenn. Sup. Ct. R. 8, Canon 9 (avoiding the appearance of impropriety). We will examine both requirements and whether a conflict is waivable.

#### (1) Conflict and Waiver

Although one seeking post-conviction relief has no constitutional right to counsel or effective assistance of counsel, he or she does have a statutory right to counsel. *See* Tenn. Code Ann. § 40-30-

207(b)(1); Leslie v. State, 36 S.W.3d 34, 38 (Tenn. 2000). By implication, we believe this statutory right, even though not a Sixth Amendment right, includes the right to be represented by conflict-free counsel. *See* Wilcoxson v. State, 22 S.W.3d 289, 320 (Tenn. Crim. App. 1999) (noting right to conflict-free counsel is inherent in cases which involve the Sixth Amendment right to counsel).

Generally, an attorney with an "actual conflict of interest" should withdraw or be subject to disqualification. Culbreath, 30 S.W.3d 309, 312-13 (Tenn. 2000). An "actual conflict of interest" usually involves one attorney representing two or more persons with diverse interests. State v. Tate, 925 S.W.2d 548, 552 (Tenn. Crim. App. 1995). In essence, it is where an attorney is placed in a position of divided loyalties. *Id.* at 553 (citations omitted).

Most conflicts can be waived by the client after full disclosure. *See id.* However, trial courts should have substantial latitude in refusing waivers of conflicts since the likelihood and dimensions of conflict are often difficult to predict. Wheat v. United States, 486 U.S. 153, 162-63, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). The Wheat allowance of substantial latitude to the trial court in accepting or refusing waivers appears to be based, at least in part, upon the federal courts' independent interest in ensuring ethical compliance and the appearance of fairness. *Id* at 160. Since the State of Tennessee has the same independent interest, we see no reason to deviate from the Wheat rationale.

### (2) DR 5-101: Independent Professional Judgment

Withdrawal or disqualification under DR 5-101 is required only when "professional judgment . . . will be or reasonably may be affected by the lawyer's own financial . . . or personal interests." We further note that the rule expressly provides that the conflict may be waived "with the consent of the client after full disclosure." DR 5-101.

### (3) Canon 9: Appearance of Impropriety

Withdrawal or disqualification may also be required where there is an "appearance of impropriety" as set forth in Canon 9.[1] *See* Clinard, __ S.W.3d at __, 2001 WL 530834, at *6; Culbreath, 30 S.W.3d at 313. The existence of an appearance of impropriety is determined from the perspective of a reasonable layperson. Clinard, __ S.W.3d at __, 2001 WL 530834, at *7 (citation omitted). The mere possibility of impropriety is insufficient to warrant dismissal. *Id*. at ___, 2001 WL 530834, at *6. Disqualification of counsel on this basis alone is a "drastic remedy" to be employed only in "rare case[s]." *Id*. at ___, 2001 WL 530834, at *7.

---

[1]The Tennessee Supreme Court noted that the "appearance of impropriety" standard has been widely criticized and has been rejected by the American Bar Association's Model Rules of Professional Conduct. Clinard, __ S.W.3d at __, 2001 WL 530834, at *6. The court also noted that future revisions to our Code could yield a similar rejection. *Id*. at n. 7. Since the ultimate outcome of Clinard was based upon the "appearance of impropriety" provision, the Clinard holding may not be lasting precedent.

### (4) Summary

In summary, a post-conviction petitioner is statutorily entitled to conflict-free counsel. A violation of DR 5-101 (impaired independent professional judgment) or Canon 9 (appearance of impropriety) creates a conflict. These conflicts may usually be waived after full disclosure, except the trial court is given substantial latitude in determining whether to accept a waiver. The appellate court reviews the trial court's determination on disqualification issues under an abuse of discretion standard; however, this court closely scrutinizes disqualification since it involves an interpretation of rules governing ethical behavior of attorneys.

### C. Analysis: DR 5-101

Watkins' testimony at the hearing revealed that she is distantly related to the victim (second cousin once removed); she never met the victim; she was unaware of the post-conviction proceedings until September 2000; she was unaware that the PCD's Office was appointed to represent petitioner until she called the district attorney general's office; she had limited contact with the victim's family; the petitioner's continued representation by the PCD's Office would not affect her work on the commission; she is one of nine commissioners on the PCD Commission; the commission meets one or two times per year mostly by telephone or video conference; and she has no real involvement as a commission member with the day-to-day operations of the PCD. The affidavit of the PCD states that Watkins' situation would not affect the representation of the petitioner.

The only argument that can realistically be made with regard to an actual conflict is that, as one of nine commission members, Watkins votes to hire the PCD and oversees the budget. We conclude that Watkins' distant familial relationship with the victim and his family and her *de minimus* authority over petitioner's counsel are not sufficient to establish an actual conflict or a serious potential for a conflict. We further conclude that there is no indication that the PCD's professional judgment will be or reasonably may be affected by these circumstances. Thus, there is no violation of DR 5-101.

### D. Analysis - Appearance of Impropriety

However, our analysis does not end with our finding of no actual conflict, for "even '[i]f there is no actual conflict of interest, the court must nonetheless consider whether conduct has created an appearance of impropriety.'" Clinard, __ S.W.3d at __ , 2001 WL 530834, at *7 (citing Culbreath, 30 S.W.3d at 312-13).

In Clinard, our supreme court held that the mere appearance of impropriety justified the removal of counsel where a member of the counsel's law firm formerly represented the adversaries of the firm's current clients in the same litigation. *Id.* The court described the situation as follows:

> [Counsel's] firm now stands as adversary against the [former clients] in the very litigation in which [counsel] once represented them and gained their confidences. To analogize to baseball, [counsel] has not only switched teams, he has switched teams in the middle of the game after learning the signals. That [counsel] has been benched by his new team does little to ameliorate the public perception of an unfair game.

*Id*. The case at bar does not in any way involve confidences gained by the PCD that can be used against a former client. There has been no switching of teams.

Even though there has been no switching of teams in the case at bar, an appearance of impropriety is not limited to such a scenario. *See id*. at ___, 2001 WL 530834, at *6 (observing that ethical rules must be broad, and the appearance of impropriety standard is appropriate when more specific rules may be ineffective). Accordingly, "from the perspective of a reasonable lay person," we conclude that in this capital case representation by appointed counsel under these circumstances could create, to some degree, an appearance of impropriety. *See id*. at ___, 2001 WL 530834, at *7 (holding appearance of impropriety is determined "from perspective of a reasonable lay person"). To the extent that there is an appearance of impropriety, we must now determine whether petitioner should be able to waive it.

**E. Analysis - Waiver**

The <u>Clinard</u> court qualified the standard for disqualification under Canon 9, stating "[w]e recognize that disqualification of one's counsel is a *drastic remedy* and is ordinarily unjustifiable based solely upon an appearance of impropriety. We remain convinced, however, that *in a rare case* . . . the taint of the appearance of impropriety can be purged only by disqualification." *Id*. (emphasis added). We must now determine whether the case at bar is one of those "rare case[s]" in which the taint of the appearance of impropriety can be purged only by the drastic remedy of disqualification.

The state in its brief concedes that any conflict in this matter is waivable by the petitioner upon full disclosure; however, it insists the post-conviction court is not required to accept the waiver under the circumstances. *See* <u>Wheat</u>, 468 U.S. at 162-63.

In determining whether the trial court abused its discretion in disqualifying the PCD without the opportunity for waiver, we should consider all the facts and circumstances surrounding this case. We appreciate the concerns of the trial court. This is a death penalty case which will be closely scrutinized by the courts of this state and perhaps the federal courts as well. However, we also recognize that the statute contemplates representation by the PCD absent an ethical impropriety. Certainly, the PCD is not the only counsel who can provide competent representation of the indigent petitioner. Nevertheless, the PCD was specifically created to provide specialized knowledge and competent representation in death penalty cases. We also note that the request for disqualification came long after the PCD's original involvement with the petitioner and his case. This involvement apparently began in November 1998 immediately after the Tennessee Supreme Court denied relief on direct appeal, has continued, and has resulted in over 1500 hours of work performed on

petitioner's behalf. According to petitioner's affidavit, he has developed trust in the PCD and desires their continued representation. Although the indigent petitioner is not entitled to counsel of his choice, his relationship with his appointed counsel is relevant to our evaluation as to whether disqualification is the only "drastic remedy" available to purge the taint of any appearance of impropriety. *See* Clinard, ___ S.W.3d at ___, 2001 WL 530834, at *7; *see also* Morris v. Slappy, 461 U.S. 1, 23, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983) (Brennan, J., concurring) (suggesting that the relationship with appointed counsel should be considered in determining whether continued representation is possible).

## F. Our Conclusion

After a careful review of the evidence, the ethical requirements, and the case law, we conclude that this is not one of the rare cases in which the drastic remedy of disqualification is necessary. A waiver, after full disclosure, is the appropriate option. This is especially true in light of petitioner's alleged relationship with the PCD and the extensive services already rendered on his behalf. To the extent that there may be a limited appearance of impropriety, we believe that continued representation after a proper waiver would not create an appearance of unfairness in future proceedings and would not undermine confidence in the judicial system.

## G. Procedure To Be Followed Upon Remand

The petitioner was not given an opportunity to waive any conflict or appearance of impropriety. The affidavit filed by petitioner is insufficient to constitute a proper waiver. We, like the trial court, are concerned with potential future issues arising in this capital case. Accordingly, we find it prudent in this capital case for the trial court upon remand to appoint independent counsel to advise the petitioner concerning his proposed waiver. Thereafter, petitioner should (1) be brought into open court, (2) be given a full explanation on the record how this matter would affect him; (3) be advised of his right to appointment of other counsel; (4) be questioned under oath by the parties and the post-conviction court to determine his understanding of this matter and waiver; and (5) state under oath whether he desires to waive any appearance of impropriety.[2] If petitioner understandingly waives any appearance of impropriety, the post-conviction court shall allow the PCD to continue to represent petitioner absent a compelling reason to the contrary. Absent a proper waiver, the post-conviction court shall appoint other counsel.

## CONCLUSION

Based on our examination of the record, we conclude that the trial court erroneously disqualified petitioner's counsel without petitioner having the opportunity to waive any appearance

---

[2]This procedure was utilized in Shannon L. Smith, et al v. State, C.C.A. No. 02C01-9508-CR-00241, 1997 WL 658993, at *5 (Tenn. Crim. App. filed October 23, 1997, at Jackson).

-8-

of impropriety.  We reverse the judgment of the trial court and remand this matter for appointment of independent counsel to advise petitioner on the issue of waiver and for further proceedings consistent with this opinion.

                                                _____

                                                JOE G. RILEY, JUDGE