IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2022

**STATE OF TENNESSEE v. KACY ROSE**

**Appeal from the Circuit Court for Madison County**
**No. 15-412    Roy B. Morgan, Jr., Judge**

———————————————————

**No. W2021-00995-CCA-R3-CD**

———————————————————

Defendant, Kacy Rose, appeals from the revocation of his probationary sentence.  On appeal, Defendant argues that (1) the trial court abused its discretion in failing to consider a potential conflict of interest, (2) the trial court erred in denying his motion to correct a clerical error in the order revoking Defendant's probation, and (3) his right to a speedy trial was violated.  Following our review of the record and briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Alexander D. Camp (on appeal), Jackson, Tennessee; Kacy Rose (at probation revocation hearing), Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Michelle Shirley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Procedural Background*

In September of 2015, Defendant was indicted by the Madison County grand jury for aggravated burglary, two counts of aggravated robbery, and two counts of especially aggravated kidnapping.  Defendant pleaded guilty to aggravated burglary and two counts

of aggravated robbery with the remaining charges being dismissed in February 2017.[1] The trial court imposed a three-year sentence to be served on supervised probation for the aggravated burglary conviction, consecutive to the aggravated robbery convictions. The trial court ordered concurrent five-year sentences for the aggravated robbery convictions to be served at 30 percent in the Tennessee Department of Corrections ("TDOC").

The procedural background of this case is far from clear. Based on the testimony of probation officer Spencer Hines, Defendant's supervised probation period began around December of 2018. Officer Hines testified during the probation revocation hearing that Defendant's probation was "not done until December of this year [(2021)]."

Defendant was arrested on July 21, 2020, in Madison County for various drug-related offenses. The technical record and probation revocation hearing transcript indicate Defendant was on parole in an unrelated matter in Gibson County when he was arrested. On October 28, 2020, his parole for the matter in Gibson County was revoked. Due to confusion between the convictions in Madison County and Gibson County, Defendant's probation officer did not issue a probation violation warrant on Defendant's Madison County probation until July 2, 2021.

The probation violation report issued on July 2, 2021, alleged that Defendant violated the terms of his probation by possessing a Schedule II controlled substance, possessing a Schedule VI controlled substance with intent to manufacture, deliver, or sell, possessing drug paraphernalia, and for owing $917.25 in supervision fees and $4,954.36 in court costs.

On July 27, 2021, a probation violation hearing was held, and the trial court issued a written order revoking Defendant's probation. On August 18, Defendant filed a pro se motion to correct a clerical error which the trial court subsequently denied. On August 30, Defendant filed a pro se notice of appeal and a motion seeking appointment of appellate counsel.

*Revocation Hearing*

At the probation revocation hearing, Defendant requested to waive representation by his counsel and proceed pro se. The trial court permitted Defendant to proceed pro se. Jackson Police Department Sergeant David White testified that he pulled Defendant over for speeding 58 miles per hour in a posted 40-mile-per-hour zone. When Sergeant White approached the stopped vehicle, he immediately smelled a strong odor of marijuana. Sergeant White observed Defendant slurring his speech. Sergeant White noticed "what

---

[1] The record does not contain a transcript of the guilty plea hearing.

appeared to be scattered marijuana" on the center console of the vehicle. Sergeant White testified that initially, Defendant would not exit the vehicle. Defendant eventually complied, and Sergeant White searched the vehicle. In the backseat, he found a red and black bag containing marijuana and cocaine. Sergeant White also found a digital scale on Defendant's person.

Probation officer Spencer Hines testified that he was assigned to supervise Defendant on April 3, 2020, following Defendant's release from prison.[2] Mr. Hines affirmed that he filed a probation violation warrant based on the allegations from Defendant's arrest in July 2020 and for Defendant's failure to pay his supervision fees and court costs. On cross-examination, Mr. Hines testified that Defendant called him after he got arrested. Mr. Hines admitted that he did not know Defendant's parole in Gibson County and probation in Madison County would run together. He stated, "[W]e thought that the Madison County [probation] didn't start until after [Defendant] got done with the Gibson [County parole]."

Defendant did not present proof at the revocation hearing. During closing argument, Defendant alleged a conflict of interest with the State because his former counsel told him the district attorney disliked Defendant. The State responded that it was unaware of any conflict. The trial court stated, "I don't find that I'm in a position to consider whether there's a conflict here. There's been no proof of that."

After hearing the proof and arguments, the trial court credited Sergeant White's testimony and found by a preponderance of the evidence that Defendant, while on probation, violated the law. The court stated that it did not hold Defendant's lack of fee payment against Defendant in making its decision. In consideration of all the proof, the trial court revoked Defendant's probation and ordered him to serve his three-year sentence in confinement at 30 percent. The trial court specifically noted that it was the role of TDOC to calculate Defendant's jail credits, not the court.

*Analysis*

Defendant argues on appeal that the trial court (1) abused its discretion when it denied to consider a potential conflict of interest, (2) erred in denying his motion to correct a clerical error in the revocation order, and (3) violated his right to a speedy trial. The State responds that the trial court acted properly in all respects.

I.      *Conflict of Interest*

---

[2] The probation violation report indicates that this release from prison was when Defendant paroled out of Gibson County on the unrelated matter.

- 3 -

Defendant argues that the trial court abused its discretion when it refused to consider a potential conflict of interest. The State responds that the trial court properly denied to consider the conflict of interest. We agree with the State.

In deciding whether a district attorney's office should be disqualified our supreme court has stated:

> In determining whether to disqualify a prosecutor in a criminal case, the trial court must determine whether there is an actual conflict of interest, which includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of "compromising interests and loyalties." *See* Tenn. R. Sup.Ct. 8, EC 5-1. If there is no actual conflict of interest, the court must nonetheless consider whether conduct has created an appearance of impropriety. *See* Tenn. R. Sup.Ct. 8, EC 9-1, 9-6.

> If disqualification is required under either theory, the trial court must also determine whether the conflict of interest or appearance of impropriety requires disqualification of the entire District Attorney General's office. *See State v. Tate*, 925 S.W.2d 548, 550 (Tenn. Crim. App. 1995). The determination of whether to disqualify the office of the District Attorney General in a criminal case rests within the discretion of the trial court. Appellate review of such a ruling is limited to whether the trial court has abused its discretion. *See id.* at 550.

*State v. Culbreath*, 30 S.W.3d 309, 312-313 (Tenn. 2000). "The appearance of impropriety must be real, reflect an objective public perception rather than the subjective and anxious perceptions of the litigants, and reflect the views of a layperson with a knowledge of all the facts." *State v. Jarquese Antonio Askew*, No. M2014-01400-CCA-R3-CD, 2015 WL 9489549, at *5 (Tenn. Crim. App. Dec 29, 2015), *perm. app. denied* (Tenn. May 6, 2016).

Here, Defendant offered no evidence at the revocation hearing to establish a conflict of interest.[3] During closing argument, Defendant alleged that a conflict of interest existed because the district attorney did not like him. Defendant said, "I recorded my attorney telling me how [the district attorney] had a h[***]-on for me and a dislike for me[.]" The trial court properly determined that it was not "in a position to consider

---

[3] Defendant included a letter from a law clerk in Gibson County as an attachment to his brief in this Court on appeal. Attachments to appellate briefs that are not included in the technical record will not be considered by this Court on appeal. *See State v. Matthews*, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990).

whether there's a conflict here [because t]here's been no proof of that." We conclude that the trial court did not abuse its discretion in denying to consider the conflict of interest. Defendant is not entitled to relief on this issue.

## II. Jail Credits

Defendant alleges that the trial court erred in denying his motion to correct a clerical error in the revocation order. Specifically, he asserts that the trial court should have included Defendant's jail credits in the order revoking his probation. The State responds that the trial court properly denied the motion. After review, we agree with the State.

Tennessee Rule of Criminal Procedure 36 states that a court "may at any time correct clerical mistakes in judgments . . . arising from oversight or omission." Clerical errors arise "simply from a clerical mistake in filling out the uniform judgment document." *Cantrell v. Easterling*, 346 S.W.3d 445, 449 (Tenn. 2011). Our supreme court has held that "to determine whether a clerical error has been made, a court ordinarily must compare the judgment with the transcript of the trial court's oral statements." *State v. Brown*, 479 S.W.3d 200, 213 (Tenn. 2015). If a conflict between the transcript and the judgment exists, then the transcript of the court's oral statements control. *Id*.

Here, the trial court explained that it was the role of TDOC to calculate Defendant's jail credits and that it would not consider the calculation of Defendant's jail credits. The probation revocation order reflects the trial court's statement and reads, "Full Revocation with Defendant to serve original sentence imposed and receive credit on the above-referenced cases only for time served by incarceration and/or Community Corrections." There is no conflict between the revocation hearing transcript and the revocation order and therefore no clerical error.

The record on appeal does not include any documentation from TDOC to indicate the credits due to Defendant or that TDOC improperly denied him credits. As a result, this Court has nothing to review. The proper avenue to seek review of the calculation of Defendant's sentence is through the Uniform Administrative Procedures Act, not an appeal to this Court. *See* T.C.A. § 4-5-101, *et. seq*.

## III. Right to a Speedy Trial

Defendant argues that the trial court violated his right to a speedy trial. Specifically, Defendant contends that the year-long delay between his arrest for the drug-related offenses and the filing of the probation violation warrant violated his right to a

speedy trial.  The State responds that the time begins running for a speedy trial violation in the context of probation revocation when the probation revocation proceedings are commenced, not when a defendant is arrested.  While neither party argues waiver, based on our review, we consider the issue waived for failing to assert the right in the lower court.  *See State v. Allen*, 593 S.W.3d 145, 154 (Tenn. 2020) (stating that "[g]enerally, issues raised for the first time on appeal are waived.").

Defendant states in his brief, "It appears from the record that the Defendant raised the issue of speediness on the same day he initiated pro se representation."  After scouring the record, we find nothing to indicate Defendant asserted his right to a speedy trial.  During Defendant's cross-examination of Mr. Hines, Defendant inquired about the delay between the arrest and the filing of the probation violation warrant.  However, this was in regard to the calculation of his jail credits, not to assert his right to a speedy trial.  By failing to assert his right to a speedy trial below, Defendant hindered the trial court's ability to make the findings of fact necessary to satisfy the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).  *See Barker*, 407 U.S. at 530 (1972) ("A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis."); *see State v. Malcolm J. Coble,* No. W2012-01692-CCA-R3-CD, 2013 WL 12185232 (Tenn. Crim. App. June 28, 2013), *no perm. app. filed*; *see State v. Adrian Ann Crain*, No. W2010-00274-CCA-R3-CD, 2011 WL 579114 (Tenn. Crim. App. Feb. 17, 2011), *no perm. app. filed*.  Consequently, the issue is waived for appellate review.

*Conclusion*

Based on the foregoing, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE