# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
May 15, 2001 Session

## BRYAN HANLEY v. STATE OF TENNESSEE

**Appeal as of Right from the Circuit Court for Hickman County**
**No. 98-5053C-I      Timothy L. Easter, Judge**

---

**No. M2000-02182-CCA-R3-PC - Filed November 16, 2001**

---

The petitioner, Bryan Hanley, was convicted by a jury in the Hickman County Circuit Court of one count of first degree murder and one count of theft of property over $1000. The petitioner was sentenced to life imprisonment in the Tennessee Department of Correction for the murder conviction and to three years incarceration for the theft conviction, with the sentences to run concurrently. Subsequently, the petitioner filed a post-conviction petition alleging the ineffective assistance of counsel. The post-conviction court denied the petition and the petitioner appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Melanie Totty Cagle, Centerville, Tennessee, for the appellant, Bryan Hanley.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Ronald Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On November 1, 1994, the petitioner was convicted in the Hickman County Criminal Court of the first degree murder of Timothy Tanner and of the theft of over $1000 worth of property from Tanner's mail truck. At trial, the primary evidence against the petitioner was the testimony of his co-defendant and half-brother, John David Walker.[1] Subsequent to his convictions, the petitioner

---

[1] For a full recitation of the facts underlying the petitioner's convictions, see Bryan R. Hanley v. State, No. 01C01-9508-CC-00266, 1997 WL 469430, at **1-3 (Tenn. Crim. App. at Nashville, August 15, 1997).

filed a pro se post-conviction petition alleging ineffective assistance of counsel and several other grounds for relief. Upon reviewing the petition, the post-conviction court ruled that ineffective assistance of counsel was the only viable ground for relief alleged in the petition. Accordingly, the post-conviction court appointed counsel to represent the petitioner and to file an amended petition furthering the petitioner's arguments concerning the ineffectiveness of his trial counsel.

On June 15, 2000, a post-conviction hearing was held where the petitioner presented proof of the ineffective assistance of his trial counsel. The petitioner alleged that his trial counsel, Dale Quillen, was ineffective on the following grounds: (1) Quillen did not disclose to the petitioner the full financial relationship between Quillen and Michael Flanagan, the attorney for the petitioner's co-defendant, John David Walker, thereby nullifying the petitioner's waiver of conflict-free counsel; (2) Quillen and Flanagan engaged in joint representation of the petitioner and Walker to the detriment of the petitioner; (3) Quillen failed to challenge the factual allegations in the application for a search warrant and affidavit which led to the presentation of certain scientific evidence at trial; and (4) Quillen failed to adequately investigate the case prior to trial.

At the post-conviction hearing, the petitioner testified that, at their initial meeting, Quillen and Flanagan both came to the Hickman County Jail and spoke with the petitioner and Walker. They decided that Quillen would represent the petitioner for a fee of twenty-five thousand dollars ($25,000) and Flanagan would represent Walker for the same amount, for a total of fifty thousand dollars ($50,000). Additionally, the petitioner adduced proof of Quillen's representation of both the petitioner and Walker at the arraignment and the existence of several identical motions which were filed by Quillen and Flanagan.

At the initial meeting, Quillen and Flanagan disclosed to the petitioner that Flanagan was "associated" with Quillen in that they shared office space. Quillen testified that he thoroughly apprised the petitioner of the potential conflict of interest due to his representation of the petitioner and Flanagan's representation of Walker. Quillen maintained that the petitioner was satisfied with the terms of representation.

Evidence at the post-conviction hearing revealed that Quillen and Flanagan did indeed share the same office space, including the same secretary. Additionally, Flanagan explained that he was an "independent contractor" with Quillen. Quillen paid Flanagan a bi-weekly salary of two thousand dollars ($2,000) in addition to a bonus of twenty percent (20%) of any fees he earned for the firm. Nonetheless, both Quillen and Flanagan testified that they did not share any information regarding the case, specifically noting that Quillen learned from the State, not Flanagan, that Walker would testify against the petitioner at trial.

The petitioner also argued that Quillen did not adequately challenge the veracity of the affidavit underlying the warrant authorizing the authorities to search his truck for evidence of the crimes. He maintains that several people had informed Postal Inspector William L. Stinson, the drafter of the affidavit, of the petitioner's whereabouts between 4:30 p.m. and 7:45 p.m. the night of the murder; however, in the affidavit, Stinson averred that the petitioner's whereabouts during that

time frame were unknown. The petitioner argues that Quillen was ineffective in not presenting this evidence to challenge the search warrant.

Finally, the petitioner complains that Quillen inadequately investigated the case. Specifically, the petitioner contends that Quillen should have pursued the testimony of William Wise, a witness who saw someone who did not match the petitioner's description driving a mail truck similar to the victim's near the location where the victim's body was found. After considering the proof, the post-conviction court issued an order denying the petition for relief. It is from this ruling that the petitioner now appeals.

## II. Analysis

In order to be entitled to relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). This court has explained that "[e]vidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). The post-conviction court must determine witness credibility as well as the weight and value to be accorded their testimony. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Accordingly, appellate courts will grant the findings made by the post-conviction court at a hearing after observing witnesses testify and considering conflicting testimony the weight of a jury verdict. Bratton v. State, 477 S.W.2d 754, 756 (Tenn. Crim. App. 1971).

On appeal, this court will review the post-conviction court's factual findings de novo with a presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); see also Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999). That is to say, we will uphold the post-conviction court's factual determinations unless the evidence preponderates against such findings. Fields, 40 S.W.3d at 458. However, we will conduct a purely de novo review of the post-conviction court's "conclusions of law." Id.

In order to demonstrate ineffective assistance of counsel, the petitioner must satisfy a two-pronged test: first, the petitioner must prove that the performance of counsel was deficient, and, second, he must prove that such deficiency prejudiced him by creating a reasonable probability that the result of his trial is unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). If the petitioner fails to prove one of the prongs of the test, this court need not analyze further because the petitioner has then not met his burden. See Burns, 6 S.W.3d at 461. In connection with this issue, we note that this court must decide whether counsel's performance was within the range of competence required of attorneys in criminal cases in evaluating whether or not counsel's performance was deficient. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

### A. Conflict of Interest

As they are so closely related, we will address together the first two issues presented by the petitioner. The petitioner essentially argues that Quillen operated as his counsel while

laboring under a conflict of interest and did so to the petitioner's detriment, thereby performing ineffectively.

"Clearly, the right of an accused in a criminal prosecution to conflict-free representation of counsel is inherent in the Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution." State v. John W. Walden, No. 37, 1988 WL 69538, at *1 (Tenn. Crim. App. at Knoxville, July 8, 1988). However, this court has recognized that "[a]n actual conflict, rather than the mere possibility, must be established prior to any removal or withdrawal of counsel." State v. Parrott, 919 S.W.2d 60, 61 (Tenn. Crim. App. 1995). We note that "[a]n 'actual conflict of interest' usually involves one attorney representing two or more persons with diverse interests. In essence, it is where an attorney is placed in a position of divided loyalties." Kevin Burns v. State, No. W2000-02871-CCA-R9-PD, 2001 WL 912817, at *4 (Tenn. Crim. App. at Jackson, August 9, 2001) (citing State v. Tate, 925 S.W.2d 548, 552-553 (Tenn. Crim. App. 1995)); see also Clinard v. Blackwood, 46 S.W.3d 177 (Tenn. 2001). Regardless, "even when a conflict of interest is created by joint representation, a defendant may waive his right to conflict-free representation." State v. Tyrice Porter, No. 11, 1987 WL 18072, at *2 (Tenn. Crim. App. at Jackson, October 7, 1987). In sum, "a Defendant will not be deprived of his retained counsel of choice in a situation presenting a conflict of interest where the Defendant knowingly and intelligently affirms his choice." Parrott, 919 S.W.2d at 61.

The United States Supreme Court has noted "a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel." Wheat v. United States, 486 U.S. 153, 160, 108 S. Ct. 1692, 1697 (1988). Additionally, Tenn. R. Crim. P. 44(c) provides:

> Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

See also State v. Ray Edward Polk, No. 1194, 1991 WL 188885, at *8 (Tenn. Crim. App. at Knoxville, September 26, 1991). It is quite clear that Quillen and Flanagan were "associated in the practice of law" at the time that they represented the petitioner and Walker, respectively. Therefore, in order to satisfy Tenn. R. Crim. P. 44(c), the trial court must comply with the test adopted in Polk, No. 1194, 1991 WL 188885, at *9 (alterations in original) (quoting United States v. Garcia, 517 F.2d 272, 278 (5th Cir. 1975):

> [T]he ... [trial] court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty

to question the [trial] court as to the nature and consequences of his legal representation.  Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective [conflict-free] representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

See also Howard Clifton Kirby v. State, No. 03C01-9303-CR-00074, 1994 WL 525086, at *6 (Tenn. Crim. App. at Knoxville, September 28, 1994).

The issue of Quillen's conflict of interest was raised by the State in a disqualification hearing approximately one year prior to trial.  After hearing the proof, then trial judge Cornelia Clark found that although a potential conflict of interest existed, the co-defendants had executed valid waivers of their right to conflict-free counsel.  Moreover, at the hearing, both the petitioner and Walker asserted that they had been informed of the dangers of joint representation and wished to proceed with their chosen counsel. It is clear from the transcript of the disqualification hearing that the petitioner "was [thoroughly] made aware of the dangers of joint representation, the implications it held for his plea bargaining position, [and] the straight-jacket into which it thrust his attorney." Kirby, No. 03C01-9303-CR-00074, 1994 WL 525086, at *6

Moreover, in the order denying the State's motion to disqualify the petitioner's counsel, which order was expressly adopted by the post-conviction court in its ruling, Judge Clark noted that

[Quillen's and Flanagan's] statements in open court indicate . . . that they are associated with one another in the practice of law in the same firm.  Each has been retained to represent co-defendants, who are both charged with first degree murder, felony murder, and theft of property.  The lawyers have further stated in open court that they have been sensitive to the potential for conflict of interest since the beginning of the representation, have exchanged no information with one another, and will continue to exercise independent judgment in the representation of their co-defendant clients.
. . .
In this case, the Court has on two occasions examined the defendants under oath in open court about their right to effective assistance of counsel, including separate representation.  The Court has further addressed the defendants concerning the written waivers they have executed.  Through the course of discussions defendants have been made aware of the prospect that the State may be planning to treat their cases differently, and may in fact be seeking to bargain with and solicit the testimony of one co-defendant against the other as the case progresses.  It is clear that a potential conflict of interest exists, but all

> parties are fully aware of that potential.
>
> . . .
>
> [B]oth defendants have been fully advised of the consequences [of joint representation] by their counsel and by the Court, and the court finds that their waivers [of the right to conflict-free counsel] are knowing and voluntary.

Reviewing all of the evidence from the trial and the post-conviction hearing, the post-conviction court concluded that

> there is very little, if any, additional evidence at this post trial stage that supports any more of a conflict exist now than at the time of the [order denying the disqualification of petitioner's counsel]. . . . Conflict(s) and all, Mr. Quillen was the petitioner's counsel of choice and the petitioner went into this prosecution with his eyes wide open to that fact. The Court should not overrule the informed decision of a defendant who knowingly and intelligently waives the conflict and agrees to accept the consequences.
>
> . . .
>
> The conflict of interest was one imposed on Quillen by the petitioner and this is not the kind of conflict that would render his representation constitutionally infirmed and require relief under the Strickland inquiry.

> Furthermore, there is no evidence that even if Quillen had abandoned representation of the petitioner that the result of the trial would have been different. Indeed it is reasonable to believe that the State would still present Walker's testimony and the jury would have accredited his testimony and convicted the petitioner. There is no evidence that there is a reasonable probability that but for Quillen's representation that a finder of fact would have had a reasonable doubt regarding the petitioner's guilt.

We find no error in the trial court's conclusions. We conclude that

> the record [has] establish[ed] by a preponderance of the evidence that (a) the trial court advised that defendant of his right to conflict-free representation, (b) the defendant was aware of his right to separate counsel, (c) the defendant was aware that an actual conflict of interest existed, and (d) the defendant realized and appreciated the impact that the conflict would have upon his defense if he opted for joint representation.

Polk, No. 1194, 1991 WL 188885, at *10. This issue is without merit. See Robert Lloyd Wiggins v. State, No. 03C01-9605-CC-00191, 1997 WL 124253, at *12 (Tenn. Crim. App. at Knoxville, March 20, 1997); see also Antonio Chaney v. State, No. 02C01-9807-CR-00223, 1999 WL 504513, at *2 (Tenn. Crim. App. at Jackson, July 16, 1999).

B.  Search Warrant

The petitioner also argues that Quillen was ineffective by failing to challenge the factual allegations in the application for a search warrant and the accompanying affidavit.  The petitioner claims that this failure led to the dismissal of the motion to suppress and, ultimately, to the presentation of certain scientific evidence at trial.  Particularly, the petitioner contends that Quillen should have argued that, in Inspector Stinson's affidavit underlying the search warrant, Inspector Stinson incorrectly noted that the petitioner's whereabouts between 4:30 p.m. and 7:45 p.m. the day of the murder were unknown.  We note that the record reflects that Quillen did challenge the sufficiency of the search warrant; however, he did not raise the specific facts of which the petitioner complains.

On direct appeal, the petitioner raised a complaint as to the sufficiency of the facts underlying the search warrant.  This court concluded that

> [t]he sufficiency of the search warrant is therefore to be determined
> by the federal standard, which is the totality of the circumstances test
> for probable cause.
> . . . .
> The subject affidavit is detailed and in proper form.  It contains a
> thorough chronological account of events and allegations, and an
> explanation of the corroboration of many of those points.  The
> sources are sufficiently defined.  In summary, it contains ample
> appropriate information to allow the issuing judge to make the
> necessary neutral and detached determinations as to credibility and
> reliability.  Probable cause is well established.

Bryan R. Hanley v. State, No. 01C01-9508-CC-00266, 1997 WL 469430, at **4-5 (Tenn. Crim. App. at Nashville, August 15, 1997).

In light of this determination, we note that the contested portion of the affidavit constitutes only a small portion of the detailed account underlying the search warrant.  Cf. Johnny Rutherford v. State, No. E1999-00932-CCA-R3-PC, 2000 WL 246411, at **10-11 (Tenn. Crim. App. at Knoxville, March 6, 2000), perm. to appeal denied, (Tenn. 2000); Brett Allen Patterson v. State, No. 01C01-9805-CC-00221, 1999 WL 701455, at **7-9 (Tenn. Crim. App. at Nashville, September 10, 1999).  Moreover, we also note that the testimony describing the petitioner's whereabouts to Inspector Stinson is somewhat inconsistent.  For example, in the deposition of a former co-employee of the petitioner, Ron Powers, which deposition was admitted into evidence at the post-conviction hearing, Powers contends that the petitioner did not leave work until 6:00 or 6:30 p.m. on the day of the murder.  The petitioner's father alleged that, on the day of the offense, the petitioner was at his house at 6:00 p.m.  The petitioner's mother speculated that the petitioner visited at 5:30 p.m.  Therefore, Inspector Stinson's statement regarding the uncertainty surrounding the petitioner's whereabouts during the time frame in question is well-founded.  The petitioner has not demonstrated either a deficiency in Quillen's performance on this issue or that he experienced a detriment to his defense as a result of that deficiency.  Therefore, this issue is also without merit.

C. Investigation

Finally, the petitioner contends that Quillen was ineffective because he inadequately investigated the petitioner's case in the following respects: (1) he failed to locate and interview William Wise, a person who saw someone driving a mail truck in the area where the victim's body was found and who described that person in a manner inconsistent with the petitioner; (2) he failed to effectively communicate with the petitioner as to the scientific evidence that was provided by the State; and (3) he failed to interview Walker, the State's key witness.

The petitioner maintains that Quillen should have interviewed Wise concerning Wise's description of a person driving a mail truck on Bucksnort Road.[2] The petitioner contends that the description indicates that the person described was wearing a disguise and there was no testimony that the petitioner wore a disguise during the commission of the offense. Accordingly, the petitioner argues, the jury could have concluded that someone other than the petitioner committed the charged offenses. Quillen's son, Kenneth Quillen, did Quillen's investigative work on the petitioner's case. He described Wise's description as "goofy" and concluded that interviewing Wise would not have beem helpful. The petitioner claims that the testimony would have exonerated him. However, the petitioner did not present the testimony of Wise at the post-conviction hearing. This court may not speculate as to the content of a witness' testimony. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The petitioner has not met his burden of demonstrating ineffective assistance or prejudice in this instance.

The petitioner also argues that Quillen did not adequately review the scientific evidence with him prior to trial. The petitioner contends that most of the scientific evidence was inconclusive and did not connect him to the commission of the offense. Regardless of the petitioner's contentions, the record reflects that Quillen thoroughly cross-examined Tennessee Bureau of Investigation forensic scientist Audrey Shaw regarding some of the lab results and suggested alternatives other than the petitioner's guilt for the presence of the shotgun buffer material polypropylene which was found near the victim's body and in the petitioner's truck.[3] The petitioner also argues that the lab results of the materials from the crime scene did not reveal the presence of hairs, fibers, or tire tracks matching the petitioner or his truck, thereby proving that he could not have been at the scene of the crime. However, Walker testified at trial that, subsequent to the murder and theft, the petitioner destroyed his tires and bought new ones and the petitioner also pressure cleaned his truck, thus providing an explanation for the test results. The petitioner has failed to demonstrate prejudice.

Finally, the petitioner argues that counsel was ineffective for failing to interview Walker prior to trial. Flanagan, Walker's attorney, testified at the post-conviction hearing that

---

[2] The proof at the petitioner's trial indicated that the petitioner drove Tanner's mail truck to a location not far from Bucksnort Road and, at that location, abandoned both the truck and Tanner's body.

[3] The victim died as the result of shotgun wounds.

Walker would not have talked to Quillen if Quillen had pursued an interview. Moreover, the petitioner has failed to present specific evidence to establish how interviewing Walker prior to trial would have changed the proceedings. This court's opinion on direct appeal notes that, "[i]n his cross-examination of Walker, appellant's skilled attorney [Quillen] vigorously challenged the truthfulness of Walker's testimony on direct. The inconsistencies between Walker's testimony before the federal grand jury and at trial were emphasized." Hanley, No. 01C01-9508-CC-00266, 1997 WL 469430, at *5. Accordingly, the petitioner has failed to prove that he was prejudiced by counsel's failure to interview Walker prior to trial.

### III. Conclusion

Finding no reversible error, we affirm the judgment of the post-conviction court.

NORMA McGEE OGLE, JUDGE