# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 16, 2004 Session

## LINDA JUNE CROSS v. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court for Cumberland County
#### No. 3187    Leon C. Burns, Jr., Judge

---

### No. E2003-01969-CCA-MR3-PC - Filed May 6, 2005

---

The petitioner, Linda June Cross, was convicted by a jury in the Cumberland County Criminal Court of first degree murder. She was sentenced to life imprisonment in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that because her trial counsel had an actual conflict of interest in representing her, counsel was therefore ineffective. The post-conviction court denied the petition, and the petitioner now appeals. Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Ursula Bailey, Knoxville, Tennessee (on appeal) and Kay M. Doyle, Cookeville, Tennessee (at trial), for the appellant, Linda June Cross.

Paul G. Summers, Attorney General and Reporter; Michelle Chapman McIntire, Assistant Attorney General, William E. Gibson, District Attorney General; and Benjamin W. Fann and David Patterson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In 1992, the petitioner was convicted of first degree murder (hereinafter "the murder case"). After a delayed appeal, this court affirmed the judgment of the trial court. See State v. Linda June Cross, No. 03C01-9810-CR-00358, 1999 WL 1076958, at *1 (Tenn. Crim. App. at Knoxville, Nov. 30, 1999).

Subsequently, the petitioner filed a post-conviction petition, alleging that her trial counsel were ineffective. The petitioner was represented at trial by James Franklin Logan, Jr., and Kenneth

Lee Miller. The petitioner asserted that because Logan had previously sued her civilly on behalf of another client, he had an actual conflict of interest in representing her in the murder case. Further, the petitioner contended that Logan's conflict tainted Miller's representation because Miller and Logan were members of the same law firm and had represented her jointly in the murder case.

The petitioner's claims of conflict begin in 1982 when Logan represented Charles "Bubba" Smith in a civil action against the petitioner to recoup funds stolen by the petitioner (hereinafter "the civil case"). Logan obtained a default judgment against the petitioner in the amount of $100,000. Logan testified at the post-conviction hearing that

> we issued an execution, and quite frankly, I didn't know if [the petitioner] would ever speak to me again, because we executed our judgment, and came to her residence at a time in which she was not expecting an execution, no exemptions had been filed, and we levied upon all of her personal property.

Nearly contemporaneously with the civil case, a criminal action was instituted against the petitioner for embezzlement (hereinafter "the embezzlement case"). The petitioner was represented in the embezzlement case by Miller. The petitioner ultimately pled guilty to embezzlement of an amount over $200.

Later, in 1985 or 1986, Smith disappeared and was presumed dead. At the post-conviction hearing, Logan testified that he did not represent Smith's estate. Instead, Smith's surviving spouse retained attorneys to represent the estate.

In 1989, Miller joined Logan's law firm. Thereafter, in 1992, the petitioner was charged with the murder of her ex-husband's girlfriend. Logan testified at the post-conviction hearing that the petitioner's sister and brother-in-law contacted him about representing the petitioner in the murder case. At the post-conviction hearing, Logan testified that the petitioner knew that he had been the attorney for Smith. Miller testified that the petitioner knew that he had represented her in the embezzlement case. Additionally, both attorneys testified that Logan's previous representation of Smith did not result in a conflict of interest prohibiting them from representing the petitioner in the murder case. Counsel asserted that they would have declined to accept the murder case had there been a conflict of interest. Specifically, Logan stated:

> You understand, Ms. Cross was coming to me for representation. The person who might possibly have had some reason to prevent me from doing so would have been, in my mind, that if Mrs. Smith, who at that time had that asset, or would have had that asset, if there were some benefit.

Miller acknowledged that at the murder trial, evidence was presented that the petitioner had been indicted on charges of embezzling approximately $3,600 from Smith and that she had paid Joe

Norman, a co-defendant in the murder case, approximately $3,500 to commit the murder. However, Miller noted that he pointed out to the jury that the petitioner actually pled guilty to embezzlement of an amount over $200, and the actual amount of money taken was not determined. Miller further explained that the amount of money taken could have been greater or less than the amount for which the petitioner was indicted and had no relevance to the amount of money paid to Norman.

The petitioner did not testify at the post-conviction hearing.

At the conclusion of the hearing, the post-conviction court found that

> Mr. Logan did not, in my opinion, have a conflict in representing [the petitioner]. His representation against her had ceased. Nothing was obtained by him in the representation of his other clients against her. No information was obtained in any sort of confidential way. She was aware that he had sued her on behalf of Charles Smith, and freely then chose to employ him to represent her in this case. As I said, there's no information or nothing gained from her in pursuing that case of action against her that would have in some way compromised the representation in the criminal case.
>
> So, one, I don't see any conflict, and two, there certainly has been no prejudice shown here in the representation by Mr. Logan and Mr. Miller in the trial of the case or in the appeal. So it would be the judgment of this Court then, that the petition fails, has no merit, and should be dismissed. . .

The petitioner now appeals this ruling.[1]

## II. Analysis

To be successful in her claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings

---

[1] We note that the State argues that the petitioner waived her right to appeal the denial of post-conviction relief. However, the State previously raised this argument before this court in a motion to dismiss, which motion was denied. We will not now revisit this issue.

of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

The petitioner's claim of ineffectiveness stems from her assertion that "[a]t the time he agreed to represent Ms. Cross, Attorney Logan was actively representing a conflicting interest of Ms. Cross'." This court has noted that "[a]n actual conflict of interest is usually defined in the context of one attorney representing two or more parties with divergent interests." State v. Tate, 925 S.W.2d 548, 552 (Tenn. Crim. App. 1995); see also Clinard v. Blackwood, 46 S.W.3d 177 (Tenn. 2001). Tenn. Sup. Ct. R. 8, DR 5-105 (1992), which was in effect at the time of the murder case, specifically provides:

> (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).
>
> (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extend permitted under DR 5-105(C).
>
> (C) In the situations covered [above], a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

<u>See also</u> Tenn. Sup. Ct. R. 8, EC 5-1 (1992) ("The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties.").[2]

In sum, an actual conflict of interests exists "where an attorney is placed in a position of divided loyalties." <u>Kevin Burns v. State</u>, No. W2000-02871-CCA-R9-PD, 2001 WL 912817, at *4 (Tenn. Crim. App. at Jackson, August 9, 2001). It is unquestioned that "an accused is entitled to zealous representation by an attorney unfettered by a conflicting interest." <u>State v. Thompson</u>, 768 S.W.2d 239, 245 (Tenn. 1989). To establish a denial of the Sixth Amendment right to counsel, a petitioner need show only that an actual conflict existed. <u>Id.</u> Prejudice is presumed to exist when an attorney represents divergent interests. <u>Id.</u>

The petitioner contends that Logan had an actual conflict of interest which developed because Logan had previously represented Smith in a civil lawsuit against the petitioner for embezzling money from Smith's business. The petitioner argues that because the State implied at trial that the money she used to pay Norman for the murder came from the embezzlement, Logan had an actual conflict and thus should not have represented her. We fail to see how the foregoing facts indicate that Logan suffered from an actual conflict of interest in representing the petitioner. Logan sued the petitioner civilly and obtained a default judgment against her. The petitioner was later tried criminally on embezzlement charges. During the embezzlement case, the petitioner was represented by Miller. Logan was not involved in the criminal case, but he testified that he monitored the proceedings because of the civil case. The petitioner ultimately pled guilty to embezzlement. The petitioner later sought Logan's representation when she was charged with murder. The petitioner's civil case and her murder case did not involve divergent interests. Moreover, as the State noted in its argument during the post-conviction hearing:

> [T]he best compliment that an attorney can have is that after he tries a case, that somebody on the jury comes and retains him to represent them, or the other party comes to him later in a different case and asks to represent them. And they do, and there's no conflict.

Therefore, we conclude that the petitioner has failed to prove that Logan had an actual conflict of interest in representing her.

---

[2] "Effective March 1, 2003, the Code of Professional Responsibility was replaced by the Tennessee Rules of Professional Conduct, likewise codified at Tennessee Supreme Court Rule 8." <u>State v. McCullough</u>, 144 S.W.3d 382, 385 n.1 (Tenn. Crim. App. 2003). New Rule 1.9(a) of the Rules of Professional Conduct provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents in writing after consultation.

Tenn. Sup. Ct. R. 8, RPC 1.9(a) (2003).

The petitioner also contends that the post-conviction court "erred by limiting its determination to the question of actual conflict," contending that the court should have also considered the possible appearance of impropriety.[3] Our review of the record reveals that the petitioner consistently maintained that her claim of ineffective assistance was based solely upon her contention that Logan had an actual conflict of interest. The petitioner never asserted that there was an appearance of impropriety until she raised the issue before this court. An issue raised for the first time on appeal is considered waived. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). We conclude that this issue is waived, and we will not address this issue on the merits.

### III.  Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____

NORMA McGEE OGLE, JUDGE

---

[3] We note that the "American Bar Association's Model Rules of Professional Conduct . . . patently rejects the [appearance of impropriety] standard." Clinard, 46 S.W.3d at 186. Further, Tennessee's current Rules of Professional Conduct are patterned after the Model Rules. See State v. Christopher A. Davis, M2001-01866-CCA-R3-DD, 2003 WL 1523277, at *19 n. 3 (Tenn. Crim. App. at Nashville, Mar. 25, 2003), aff'd, 141 S.W.3d 600 (Tenn. 2004). Specifically, this court has noted that "[n]either Rule 1.10 or 1.11 [of the new model rules] adopts an appearance of impropriety standard." State v. Frankie E. Casteel, No. E2003-01563-CCA-R3-CD, 2004 WL 2138334, at *16 (Tenn. Crim. App. at Knoxville, Sept. 24, 2004), perm. to appeal denied, (Tenn. 2004). However, these rules only apply prospectively "to any relationship existing on or conduct taken after March 1, 2003." Id. at *15.